# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

FILED

2015 DEC 16  AM 10: 39

| | | |
|---|---|---|
| AMERICAN STEWARDS OF LIBERTY, *et. al.* | §§§§ | |
| Plaintiffs, | §§ | |
| v. | §§§ | CIVIL ACTION NO. 1:15-cv-01174 |
| DEPARTMENT OF THE INTERIOR, *et al.*, | §§§ | |
| Defendants. | §§§ | |

## MOTION TO INTERVENE AS PLAINTIFFS BY JOHN YEARWOOD AND WILLIAMSON COUNTY, TEXAS

TO THE HONORABLE JUDGE OF SAID COURT:

Intervenor-Plaintiffs John Yearwood and Williamson County, Texas (collectively, "Applicants") move to intervene into the above referenced matter to protect their significant property and liberty interests at stake in this litigation pursuant to Federal Rule of Civil Procedure 24.

## I.    EXECUTIVE SUMMARY

1.    Plaintiffs challenge the United States Fish and Wildlife Service's (the "Service") denial to delist the Bone Cave Harvestman (BCH)  - an intrastate cave arachnid existing only in Central Texas - from the Endangered Species Act (ESA) listing. Plaintiffs complain that the endangerment listing of the BCH is not justified by the most recent science and is therefore improper under the ESA.

2.     Applicants seek to intervene alleging that the BCH listing and prohibition on takes exceeds Congress's authority under the Interstate Commerce Clause.  Under the Commerce Clause, Congress may only regulate economic activities that substantially affect interstate commerce. *United States v. Morrison*, 529 U.S. 598, 608-09 (2000). Congress may only regulate non-economic activities if such regulation is necessary to vindicate an otherwise valid comprehensive economic regulatory scheme. *Gonzales v. Raich*, 545 U.S. 1 (2005); *U.S. v. Whaley*, 577 F.3d. 254, 260 (5th Cir. 2009).[1]  BCH takes occur only in Texas. These takes are categorically non-economic activity, and the regulation of BCH takes is not necessary to regulate an interstate market or vindicate an otherwise valid comprehensive economic regulatory scheme.  Accordingly, the Commerce Clause does not authorize federal regulation of the BCH.

3.     Applicants satisfy the requirement for intervention as of right in this case under Federal Rule of Civil Procedure 24(a) because they have an interest in property affected by the outcome of this action and existing parties do not adequately represent that interest. In the alternative, Applicants seek permissive intervention pursuant to Federal Rule of Civil Procedure 24(b) as they raise constitutional issues not raised by Plaintiffs.

## II.     APPLICANTS

4.     Applicant John Yearwood owns approximately 865 acres of ranch-land in Williamson County, Texas. The land has been in his family since 1871. Mr. Yearwood has three BCH occupied sites on his property. Because the ESA prohibits Mr. Yearwood from engaging in

---

[1]     The Fifth Circuit previously ruled that ESA regulation of intrastate species was permissible under the third *Lopez* category. That ruling is now in question as the Supreme Court and Fifth Circuit have concluded that cases previously subject to the third *Lopez* category should properly be reviewed under the higher standard of the Necessary and Proper Clause. *Raich*, 545 U.S. 1; *U.S. v. Whaley*, 577 F.3d. at 260. Applying that standard, a federal district court recently found unconstitutional ESA regulation of an intrastate species. *PETPO v. United States Fish and Wildlife Service, et al.*, 57 F.Supp.3d 1337,1346 (2014).

any activities that could potentially harm any endangered species, the BCH listing significantly effects the ways in which Mr. Yearwood can use and enjoy his property in and around those BCH sites.

5.      Applicant Williamson County, Texas is a governmental entity located in Central Texas. The County owns property that contains BCH habitat and also provides government services to its citizens with BCH on their property. Moreover, the County currently maintains several caves as BCH refuges and spends public money to mitigate BCH takes. The BCH listing is expensive to the County, impacts the way the County uses its property, and impacts its ability to provide services to residents. Williamson County has all statutory duties regarding land within its jurisdiction delegated to it by the Texas Legislature. TEX. CONST. ART. IX; TEX. LOCAL GOV'T.  A majority vote of the Williamson County Commissioners Court seated on December 1, 2015, approved its participation as a party in this lawsuit.

## III.    STATEMENT OF FACTS

6.      The BCH is a small arachnid existing only in isolated caves in Central Texas.  There is no commercial market for the BCH. It is not utilized for any practical purpose and is not bought or traded in interstate commerce. Indeed, the government concedes that "overutilization" is not a threat for the continued viability of the BCH.

7.      In 1988, the Service listed the BCH as endangered under the ESA. At the time of the original listing, there were only five cave locations known to house the BCH. Since that time, more than 160 additional cave locations have been found. Moreover, research has shown that the BCH is far more tolerant of human activities than initially thought.  Nonetheless, the government refuses to remove the BCH from the endangered species list.

8.      Plaintiffs filed their petition in 2014 to have the BCH removed from the endangered species list.  The Service denied the petition on June 1, 2015.  On December 14, 2015, Plaintiffs filed this underlying suit to delist the BCH. Plaintiffs are unopposed to Applicants' intervention in the case.

9.      The BCH exists only in Texas, is not bought or traded in interstate commerce, and does not substantially affect interstate commerce. ESA regulation of the BCH exceeds Congress's delegated authority under the Commerce Clause. This reasoning was recently adopted in *PETPO v. United States Fish and Wildlife Service, et al.*, 57 F.Supp.3d 1337,1346 (2014). In that case, the Utah District Court found that the ESA prohibition on takes of the intrastate species Utah Prairie Dog was unconstitutional because the Prairie Dog only exists in Utah and is not bought or traded in interstate commerce. *Id.*

10.     Applicants adopt by reference and incorporate herein their proposed Complaint attached as Exhibit A, to be filed should leave be granted for Applicants to intervene.

11.     Because findings of law and fact in this litigation could affect arguments that Applicants' wish to make in the future, and the outcome of this litigation would have an immediate effect on Applicants' property rights, Applicants' intervention in this case is proper.

## IV.     ARGUMENT AND AUTHORITIES

## A.     APPLICANTS' SATISFY THE REQUIREMENTS FOR INTERVENTION AS OF RIGHT.

12.     On timely motion, the court must permit anyone to intervene who: "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to

protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P.

24(a).

13.     In applying this standard, courts construe Rule 24 liberally, and doubts are "resolved

in favor of the proposed intervenor." *In re Lease Oil Antitrust Litigation*, 570 F.3d 244, 248

(5th Cir. 2009). Generally, federal courts will "allow intervention where no one would be hurt

and the greater justice could be attained." *Heaton v. Monogram Credit Card Bank of*

*Georgia*, 297 F.3d 416, 422 (5th Cir.2002).

14.     To achieve these ends, the Fifth Circuit has developed the following four-factor test to

determine when intervention as of right is appropriate.

> (1) the applicant must file a timely application; (2) the applicant must claim an
> interest in the subject matter of the action; (3) the applicant must show that
> disposition of the action may impair or impede the applicant's ability to protect
> that interest; and (4) the applicant's interest must not be adequately represented
> by existing parties to the litigation. *Heaton*, 297 F.3d at 422.

As explained below, Applicants satisfy these four factors.

###     1.     Applicants' Motion Is Timely.

15.     Timeliness of intervention depends on a "review of all the circumstances." *Trans*

*Chem. Ltd. v. China Nat'l Mach. Imp. & Exp. Corp.*, 332 F.3d 815, 822 (5th Cir.2003).

Nonetheless, the Fifth Circuit has identified at least four factors that it will consider to

determine timeliness: (1) the length of time the intervenor knew or should have known of his

interest in the case; (2) prejudice to the existing parties resulting from the intervenor's failure

to apply for intervention sooner; (3) prejudice to the intervenor if his application for

intervention is denied; and (4) the existence of unusual circumstances. *Id.*

16.     Although these factors give structure to the timeliness analysis, the Fifth Circuit has

repeatedly held that they do not constitute a rigid formula. *Ross v. Marshall*, 426 F.3d 745,

754 (5th Cir. 2005). The "timeliness analysis remains 'contextual,'" and should not be used as a "tool of retribution to punish the tardy would-be intervenor," but rather should "serve as a guard against prejudicing the original parties by the failure to apply sooner." *Id.* Here, while there are no unusual circumstances, each of three remaining factors weigh in favor of allowing Applicants to intervene.

> **a.    There was no significant gap in time between Applicants' knowledge of their interest in the litigation and filing of the motion to intervene.**

17.    When the intervention is filed within days of the Original Complaint, there is a strong presumption of timeliness. *See, e.g., Stallworth v. Monsanto Co.*, 558 F.2d 257 (5th Cir.1977) (movants discharged their duty to act quickly by filing petition less than one month after district court entered consent order); *Association of Professional Flight Attendants v. Gibbs*, 804 F.2d 318 (5th Cir.1986) (five month lapse found not unreasonable). "Most [Fifth Circuit] case law rejecting motions for intervention as untimely concern motions filed after judgment was entered in the litigation." *Edwards v. City of Houston*, 78 F.3d 983,1001 (5th Cir. 1996); *see also, John Doe No. 1 v. Glickman*, 256 F.3d 371, 377 (5th Cir. 2001) ("The Institute filed its motion to intervene ... before trial and any final judgment. We cannot say that this delay is unreasonable.").

18.    Here Applicants filed this motion to intervene the day after Plaintiffs filed their Original Complaint. This gap between knowledge of interest in the litigation and filing of the motion to intervene is well within the norm for the Fifth Circuit. Applicants' motion is therefore timely.

> **b.    The timing of Applicants' intervention will not prejudice existing parties.**

19.     The second timeliness factor "weighs the prejudice to other parties caused by the delay in seeking intervention." *In re Lease Oil Antitrust Litigation*, 570 F.3d at 248. "Any potential prejudice caused by the intervention itself is irrelevant, because it would have occurred regardless of whether the intervention was timely." *Id.*.

20.     Here, the timing of Applicants' intervention will not prejudice any of the parties. To date, Plaintiffs have filed the only pleading in this case. Applicants' motion for intervention was filed the next day. Therefore, granting Applicants' motion at this time will not result in significant disruption or delay. Nor will it undermine any of the progress in the litigation to date—there have not been any motions or other matters ruled on by this Court. Accordingly, granting intervention is proper.

<strong>c.     Denying intervention would prejudice Applicants.</strong>

21.     The standard for determining prejudice is low. *See, Sierra Club v. Espy*, 18 F.3d 1202, 1207 (5th Cir. 1994). In *Sierra Club*, the court found that the Texas Forest Association (who purchases timber from national forests) would be prejudiced if not allowed to intervene in a lawsuit determining the validity of National Forest Service regulations regarding the harvesting of timber. *Id.* The court found that the prejudice remained, despite the fact that the TFA was involved in other litigation on the issue. *Id.* As the court explained, even a temporary restriction on rights is sufficient to constitute prejudice. *Id.* (The Movants "have the prospect of injury if the Forest Service cannot deliver constant volumes of timber.").

22.     Similarly here, Applicants' have an interest in using their property without unconstitutional restrictions. Should this court deny Applicants' request for intervention, Applicants' will continue to be restricted in the way that they can use their property.

<strong>2.     Applicants have an interest in the subject matter of the action.</strong>

23.     The interest test is "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Sierra Club v. Espy*, 18 F.3d 1202, 1207 (5th Cir. 1994).  To meet the interest requirement of Rule 24, all that is required "is an interest in property or other rights that are at issue" in the underlying litigation. *Diaz v. Southern Drilling Corp.*, 427 F.2d 1118, 1124 (5th Cir. 1970). An applicant's interest is obvious when he asserts that the subject matter of the suit will affect his ability to use his private property. *Id.* ("Interests in property are the most elementary type of right that Rule 24(a) is designed to protect.").

24.     Applicants assert that the subject matter of this suit will affect their ability to use their property. Here, Applicants have considerable property and liberty interests at stake in the ongoing litigation because they own and manage property containing BCH. If the Service is successful in rejecting ASL's attempt to have BCH delisted, Applicants ability to use their property would continue to be impaired. Given the numerous ways that a person can cause a BCH take, Applicants will have little choice but to abandon or substantially restrict their uses of their lands. These interests are sufficient to support intervention in this case.

### 3.     Applicants' interest will be impaired if they are not allowed to intervene.

25.     To meet the third requirement, "the applicant must be so situated that disposition of the action may, as a practical matter, impair or impede, his ability to protect [his] interest. " *Edwards v. City of Houston*, 37 F.3d 1097, 1107 (5th Cir. 1994). This is a low bar.  Threat of "economic injury from the outcome of litigation" alone is sufficient. *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009).

26.     In *Sierra Club v. Espy,* 18 F.3d at 1207, the court held that the association's interest would be impaired if not allowed to intervene because, as a practical matter, the interpretation of the regulation would affect the association's ability to collect timber.

27.     Here, the issue in the ongoing litigation—i.e. whether the BCH should be delisted— will, as a practical matter, determine how Applicants can use their property. This impairment is sufficient for Rule 24.

### 4.     Applicants interests are not adequately represented by the existing parties.

28.     The potential intervener has the burden of proving that the existing parties do not adequately represent her interest. *Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n. 10 (1972). This burden, however, is "minimal." *Id.* "The potential intervener need only show that the representation *may be* inadequate." *Id.*

29.     In evaluating adequacy of representation, the court looks to three factors: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervener's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervener would offer any necessary elements to the proceeding that other parties would neglect." *Wolfsen Land & Cattle Co. v. Pac. Coast Fed'n of Fishermen's Associations*, 695 F.3d 1310, 1316 (Fed. Cir. 2012)

30.     Here, while the goals of Applicants and Plaintiffs are similar, they are different in a fundamental way. Plaintiffs seek to have the BCH delisted because the threats justifying the listing are no longer present. Applicants additionally wish to have the ESA regulation of BCH and prohibition on BCH takes declared unconstitutional. This difference is sufficient to meet all three factors.

### B.     APPLICANTS' SHOULD BE ALLOWED TO INTERVENE TO ASSERT CONSTITUTIONAL ISSUES NOT RAISED BY PLAINTIFFS.

31.     Rule 24(b)(2) authorizes permissive intervention when the application raises a question of law or fact that is material to the main action. Intervention should be granted if it would not "unduly jeopardize or delay the determination of the original suit." *U.S. v. Allegheny-Ludlum Industries, Inc.*, 517 F.2d 826, 841 (5th Cir. 1975).

32.     Here, Applicants seek to raise constitutional issues not raised by Plaintiffs, but nonetheless material to this Court's determination of the case. Because Applicants have moved to intervene to argue these issues at such an early stage in this litigation, intervention will not unduly jeopardize or delay the determination of the original suit. Moreover, should Applicants be required to file their own separate lawsuit, it will waste highly valuable judicial resources to litigate issues already present in this litigation. Accordingly, permissive intervention is proper.

## V.     PRAYER AND CONCLUSION

THEREFORE, Applicants respectfully request the Court grant their motion to intervene as party-plaintiffs. Furthermore, Applicants request the Court accept their Complaint attached as Exhibit A and order the Clerk to file.

ROBERT HENNEKE
Texas Bar No. 24046058
rhenneke@texaspolicy.com
CHANCE WELDON
Texas Bar No. 24076767
cweldon@texaspolicy.com
Texas Public Policy Foundation
Center for the American Future
901 Congress Avenue
Austin, TX 78701
PHONE: 512-472-2700
FAX: 512-472-2728
*Attorneys for Applicants*

## CERTIFICATE OF CONFERENCE

The undersigned counsel has conferred with Plaintiffs' counsel concerning the relief sought in this Motion, and was advised that Plaintiffs' counsel did not oppose this Motion to Intervene. Because Defendants have not yet responded to Plaintiffs' Original Complaint, and Defendants' counsel has not yet been identified, Intervenors were unable to confer with opposing counsel prior to filing this motion.

ROBERT HENNEKE

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 16th day of December, 2015, a true and correct copy of Applicants' MOTION TO INTERVENE was transmitted via electronic service or certified mail as indicate below:

**Electronic Service:**
Alan M. Glen - aglen@nossaman.com
Brooke M. Wahlberg - bwahlberg@nossaman.com
Nossaman LLP
816 Congress Avenue, Suite 970
Austin, Texas 78701
*Attorneys for Plaintiffs*

**Certified Mail:**
U.S. Department of the Interior – 7014 2120 0000 6038 3722
1849 C Street, NW
Washington, DC 20240

United States Fish and Wildlife Service – 7014 2120 0000 6038 3739
Main Interior
1849 C Street, NW Room 3331
Washington, DC 20240

Secretary Sally Jewell – 7014 2120 0000 6038 3746
U.S. Department of the Interior
1849 C Street, NW
Washington, DC 20240

Director Daniel M. Ashe - 7014 2120 0000 6038 3753
United States Fish and Wildlife Service
Main Interior
1849 C Street, NW Room 3331
Washington, DC 20240

Benjamin Tuggle - 7014 2120 0000 6038 3760
Southwest Regional Director
United States Fish and Wildlife Service
P.O. Box 1306
Albuquerque, NM 87103

Civil Process Clerk for Loretta Lynch - 7014 2120 0000 6038 3777
U.S. Attorney General, Department of Justice
950 Pennsylvania Ave, NW
Washington, DC 20530-0001

Civil Process Clerk for Richard L. Durbin, Jr. - 7014 2120 0000 6038 3784
U.S. Attorney for the Western District of Texas
816 Congress Avenue, Suite 1000
Austin, Texas 78701

ROBERT HENNEKE