IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

16 NOV 22  AM 10: 27

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
                    DEPUTY CLERK

| | | |
|---|---|---|
| AMERICAN STEWARDS OF LIBERTY, *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil No. 1:15-cv-01174-LY |
| v. | ) ) ) | |
| DEPARTMENT OF INTERIOR, *et al.*, | ) ) | |
| Defendants, | ) ) ) ) | |
| _____ | ) | |

**CENTER FOR BIOLOGICAL DIVERSITY, TRAVIS AUDUBON, AND DEFENDERS
OF WILDLIFE'S MOTION TO INTERVENE AS DEFENDANTS**

The Center for Biological Diversity, Travis Audubon, and Defenders of Wildlife

(collectively, the "Conservation Groups") respectfully move to intervene as of right in this

action, or in the alternative, for permissive intervention.  Fed. R. Civ. P. 24.  The Conservation

Groups seek this intervention to defend the U.S. Fish and Wildlife Service's ("FWS") decision to

reject a petition to remove the Bone Cave harvestman ("harvestman") from the list of endangered

species, and to defend the constitutionality of FWS's authority to protect the harvestman under

the federal Endangered Species Act, 16 U.S.C. §§ 1531-1544 ("ESA").

The Conservation Groups conferred with the parties to this case regarding this motion.

Federal Defendants take no position on the intervention.  Plaintiffs take no position on this

motion at this time. Plaintiff-Intervenors oppose the motion.

As explained in the memorandum in support of this motion and supporting declarations,

the Conservation Groups meet the four requirements of Rule 24(a)(2) to intervene as of right:

(1) this motion is timely, (2) the Conservation Groups have an interest relating to the agency action at issue in this litigation, (3) as a practical matter, the Conservation Groups' interests may be impaired or impeded by this litigation, and (4) the existing parties do not adequately represent the Conservation Groups' interests. *Entergy Gulf States La. v. U.S. Envtl. Prot. Agency,* 817 F.3d 198, 203 (5th Cir. 2016), citing *Haspel & Davis Milling & Planting Co. v. Bd. of Levee Comm'rs of the Orleans Levee Dist.,* 493 F.3d 570, 578 (5th Cir. 2007). The Conservation Groups also meet the test for permissive intervention because they have a claim or defense that share common questions of law and fact with those raised in this case. Fed. R. Civ. P. 24(b).

Concurrent with this motion, supporting memorandum, and declarations, the Conservation Groups also are filing proposed answers to the Plaintiffs' and Plaintiff-Intervenors' complaints, as required by Federal Rule of Civil Procedure 24(c).

Conservation Groups are aware that Federal Defendants filed a Motion for Voluntary Remand without Vacatur (ECF 43, 45), which if granted may moot the Conservation Group' Motion to Intervene with regards to Plaintiff's claims.[1] Conservation Groups take no position on the Federal Defendants' motion. Should the Court deny the motion, Conservation Groups seek to intervene on Plaintiffs' claims as set forth herein. The Federal Defendants' motion does not appear to affect the claims brought by Plaintiff-Intervenors in this matter, and therefore Conservation Groups continue to seek intervention with regards to Plaintiff-Intervenors' claims as set forth herein.

---

[1] Conservation Groups are further aware that Federal Defendants have subsequently moved to lift the stay regarding Plaintiffs' claims (ECF 44) in order to resolve any procedural issues regarding the motion for remand.

*Conservation Groups' Mot. to Intervene*
Case No. 1:15-cv-01174-LY
Page 2

## MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE AS DEFENDANTS

## I.   INTRODUCTION

Spending its entire life underground and eyeless, the Bone Cave harvestman certainly lives up to its creepy name. It is a particular kind of "daddy" or "granddaddy longlegs" that is incredibly rare—highly adapted to the limestone caves and karst habitat that is unique to the Texas Hill Country of the Edwards Plateau. Threatened primarily by development and road construction, this tiny arachnid has been at the center of controversy since it was first listed as endangered under the ESA in 1988, with those seeking to strip its protections filing a previous delisting petition and two prior lawsuits, and now this current litigation.

Specifically, Plaintiffs are now challenging FWS's negative 90-day finding on a second petition to delist the Bone Cave harvestman, which FWS found did not to present substantial scientific or commercial information to show that delisting may be warranted due to the level of threats to its habitat. 80 Fed. Reg. 30,990 (June 1, 2015). Williamson County and an individual intervened on behalf of Plaintiffs to bring separate claims, arguing that ESA protections cannot extend to the Bone Cave harvestman under the federal Commerce Clause because the species does not occur across state lines and does not affect interstate commerce—an argument that the Fifth Circuit has already considered and flatly rejected specifically as it relates to the Bone Cave harvestman. *GDF Realty v. Norton,* 326 F.3d 622 (5th Cir. 2003).

The Conservation Groups have an unmistakable interest both in preserving the Bone Cave harvestman's status as an endangered species and ensuring the FWS's authority to enforce the ESA for it and other intrastate species is fully defended and upheld. The Center and Defenders have a long history of defending imperiled species and the protections that the ESA affords them, and Travis Audubon filed the initial petition that resulted in FWS listing the

harvestman as endangered.  Because existing parties do not fully represent the interests of the Conservation Groups, the groups seek to intervene as defendants to defend (1) FWS's decision to reject the delisting petition and (2) FWS's authority to protect species like the Bone Cave harvestman under the Commerce Clause.  The motion is timely, and the Conservation Groups meet all requirements to intervene as right under Rule 24(a).  Fed. R. Civ. P. 24(a).  If this Court determines otherwise, the Conservation Groups respectfully request this Court grant them permissive intervention under Rule 24(b).  Fed. R. Civ. P. 24(b).

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  <u>The Center for Biological Diversity, Travis Audubon and Defenders of Wildlife</u>

The Center for Biological Diversity (the "Center") is a non-profit 501(c)(3) organization with more than 50,000 active members and more than one million online activists dedicated to the protection of endangered species and wild places.  The Center has field offices throughout the United States, including Arizona, New Mexico, California, Nevada, Oregon, Washington, Alaska, Minnesota, Vermont, Florida, and Washington, D.C.  Declaration of David Noah Greenwald ("Greenwald Decl.") ¶ 3.  The Center works through science, law, and creative media to secure a future for all species, great or small, hovering on the brink of extinction.  *Id.*  The Center and its members are concerned with the conservation of imperiled species, including the Bone Cave harvestman, and the effective implementation of the ESA. Greenwald Decl. ¶ 3, 6.

Travis Audubon is a non-profit organization and an independent chapter of the National Audubon Society.  Founded in 1952, Travis Audubon recognizes the connection between conserving wildlife habitat and the ecological balance that is necessary for healthy, sustainable, and habitable communities.  Declaration of Clifton Ladd ("Ladd Decl.") ¶ 4. The organization promotes the enjoyment, understanding, and conservation of native birds and their habitat in

particular through land conservation; habitat restoration and management; environmental education; and conservation advocacy. *Id.*

Defenders of Wildlife is a not-for-profit conservation organization recognized as one of the nation's leading advocates for wildlife and their habitat. Founded in 1947, Defenders is headquartered in Washington, D.C., with field offices and staff in Alaska, Arizona, California, Colorado, Florida, Idaho, Montana, New Mexico, North Carolina, and Washington. Declaration of Michael P. Senatore ("Senatore Decl.") ¶ 3. Defenders supports more than 372,000 active members and nearly 1.2 million members, donors, and online activists, including nearly 39,600 supporters in Texas. *Id.* Defenders is dedicated to the appreciation and protection of wild animals and plants in their ecological roles within the natural environment. Senatore Decl. ¶ 4. Defenders accomplishes its goals through education, research, advocacy, and, when necessary, litigation. *Id.* Defenders advocates sound scientifically-based approaches to wildlife conservation that are geared to restoring imperiled species and preventing others from becoming threatened or endangered. *Id.*

## B. The Bone Cave Harvestman

The Bone Cave harvestman (*Texella reyesi*) is a tiny, eyeless creature that spends its entire life underground in small limestone caves and sinkholes in Texas Hill Country. It is found only in Travis and Williamson counties, with known occupied habitat in 168 caves and a range reaching less than 100 square miles. Harvestmen are commonly called "daddy longlegs" or "granddaddy longlegs," which are often mistaken for spiders, but they only superficially resemble spiders and belong to a distinct order of arachnids known as Opiliones.

Mainly found under large rocks and in the coolest parts of caves, the Bone Cave harvestman is a rare kind of its species that is specially adapted to survive in the unique karst

habitat found in this region.  It is particularly sensitive to humidity levels below saturation, and it

depends on stable temperatures and nutrients that wash or fall in from the surface.  Thus, even

though it never ventures above-ground, the Bone Cave harvestman and its habitat are intricately

linked to and highly dependent on the overlying surface habitat and conditions.  Consequently,

development and road construction can have devastating impacts to this endangered species—

including a reduction in nutrient inputs; alterations in drainage patterns; increases in sediment,

pesticides, fertilizers, and other pollution; and caves filling in and/or collapsing.  *See* 80 Fed.

Reg. 30,990, 30,993-94 (June 1, 2015).

### C. ESA Protections for the Bone Cave Harvestman and Prior Attempts to Eliminate Them

The FWS listed the Bone Cave harvestman as an endangered species in 1988 after Travis

Audubon filed a petition for ESA protection.  53 Fed. Reg. 36,029, 36,030 (Sept. 16, 1988).  The

species was first recognized and listed as the Bee Cave harvestman, but subsequent taxonomic

studies showed them to be a separate and distinct species and FWS confirmed the endangered

listing under the common name of Bone Cave harvestman in a final rule published in 1993.  56

Fed. Reg. 43,818 (Aug. 18, 1993).  The species is primarily threatened by urban development,

which can cause caves to fill in or collapse; the alteration of drainage patterns; harm from

sediment, pesticides, fertilizers, and other pollution; and increased human visitation and

vandalism.  80 Fed. Reg. 30,990, 30,993 (June 1, 2015).

Efforts to strip ESA protections from the Bone Cave harvestman started right after the

protections were established, with a previous delisting petition and several lawsuits brought

before the present case.  *See e.g.* Case Nos. A-98-CA-772-SS, 00-0369-SS.  Indeed, the same

constitutional claims that Plaintiff-Intervenors bring here have already been raised specifically

for the Bone Cave harvestman, which the Western District of Texas and the Fifth Circuit both rejected and the Supreme Court refused to hear on petition for certiorari. *GDF Realty v. Norton,* 326 F.3d 622 (5th Cir. 2003) (cert denied).

In 1993, the Williamson County Commissioners Court petitioned FWS to delist the Bone Cave harvestman and six other karst invertebrates, which FWS determined was not warranted because "the degree of threat of habitat destruction or modification remain[ed] significant, and may have increased, throughout the range of [the] species." 59 Fed. Reg. 11,755, 11,756 (March 14, 1994). In 1998, a group of development companies sued the FWS for failing to issue "incidental take permits" that would allow Bone Cave harvestman to be killed or harmed for a shopping center, residential subdivision, and office building in Travis County—where "[t]he parties' disputes regarding the Property [were] long and convoluted, to put it mildly." Order Denying Motion to Dismiss, *GDF Realty v. Norton,* No. 00-0369-SS (Mar. 28, 2001), ECF No. 23.

Developers sued over Bone Cave harvestman protections again in 2000, with the central issue in that case being whether or not FWS has authority under the Commerce Clause to enforce the ESA for the Bone Cave harvestman and other cave species that live only in a small area of Texas. Plaintiffs' Motion for Summary Judgement, *GDF Realty v. Norton,* No. 00-0369-SS (Apr. 10, 2001), ECF No. 25. Neither the district court nor the Fifth Circuit found the Commerce Clause argument persuasive, with the Fifth Circuit rejecting it as follows:

> ESA is an economic regulatory scheme; the regulation of intrastate takes of the Cave Species [including the Bone Cave harvestman] is an essential part of it. Therefore, Cave Species takes may be aggregated with all other ESA takes. As noted, plaintiffs concede such aggregation substantially affects interstate commerce. In sum, application of ESA's take provision to the Cave Species is a constitutional exercise of the *Commerce Clause* power.

*GDF Realty v. Norton,* 326 F.3d 622, 641 (5th Cir. 2003).

Most recently, on December 4, 2009, FWS completed a Five-year Status Review of the Bone Cave harvestman, which recommended that the species remain listed as endangered. *See* 80 Fed. Reg. at 30,990. According to FWS, that review included much of the same information that Plaintiffs provided as support for their delisting petition. In fact, in its denial of the Plaintiffs' delisting petition, FWS stated that "the petitioners have based their assessment that the species can thrive in developed areas on information that we have already reviewed ...." *Id.* at 30,996. FWS ultimately concluded that the species remains vulnerable to existing threats. *Id.*

### D. <u>The Conservation Groups' Ongoing Efforts to Protect the Harvestman and Its Karst Habitat</u>

The Conservation Groups have underlying interests in this action that build from the ground up. At the foundational level, their mission is to protect imperiled species and the ecosystems upon which these species depend, giving them concrete and substantial interests in the specific rule, regulations, and laws at issue here. Greenwald Decl. ¶ 3; Ladd Decl. ¶ 4; Senatore Decl. ¶ 4. Moreover, the Conservation Groups have worked extensively to protect karst-dependent species and karst habitat in Texas Hill Country, and to protect and recover the Bone Cave harvestman specifically, evidencing a particularized interest directly on point to the case at hand.

In fact, Travis Audubon spurred the endangered listing of the Bone Cave harvestman that is the central issue here, first alerting Federal Defendants of its precarious status by letter in 1984, and then filing a formal petition for ESA protection in 1985. 53 Fed. Reg. 36,029, 36,030 (Sept. 16, 1988). Travis Audubon in fact has a long history of protecting karst habitats and the unique species these habitats support. Ladd Decl. ¶ 13. Travis Audubon petitioned to list the

harvestman and other karst species to protect them and their habitat from destruction. Ladd Decl. ¶ 7. The petition evidences that Travis Audubon was concerned with the potential harm that development would have on the sensitive karst ecosystems in the region, noting the negative impacts that construction activities and development would have on water quality, hydrogeology, and other environmental conditions that affect species such as the harvestman. *Id.*

The Center also has demonstrated a long-standing interest in the survival and recovery of karst species like the Bone Cave harvestman, taking many actions to protect and restore karst species and habitat in Texas Hill Country over the years. For example, in 2000 the Center filed a successful action to secure critical habitat designations for nine karst invertebrates that live only in Bexar County, and in 2007 the Center filed a separate lawsuit that prompted FWS to expand each of these critical habitat protections, including the critical habitat designation for a harvestman species. 77 Fed. Reg. 8450, 8452 (Feb. 14, 2012). The Center also challenged a permit that allowed three karst invertebrates to be harmed or killed by a residential and commercial development in Bexar County. *Ctr. for Biological Diversity v. U.S. Fish and Wildlife Serv.,* 202 F. Supp 2d 594 (W.D. Tex. 2002).

Further, in March 2016, the Center filed an administrative petition with the Texas Parks and Wildlife Department to ban the use of gasoline and other toxic substances to hunt snakes— filed largely due to the organization's concerns with the adverse effects to karst habitat and species, including karst invertebrates. Greenwald Decl. ¶ 9. The Center also challenged a highway construction project to enforce the ESA's consultation requirements for potential impacts to two salamanders, both of which live only in Travis County. Complaint, *Ctr. for Biological Diversity v. Tex. Dep't of Transp.,* No. 16-8760-LY (W.D. Tex. July 18, 2016). The Center has also intervened in other cases where the constitutionality of the ESA was attacked, in

order to defend the FWS's authority to protect species under the ESA. *See* Greenwald Decl. ¶

10; *Markle Interests v. US Fish & Wildlife Serv.*, No. 14-31008 (5th Cir. 2016).

The Center's participation in these cases demonstrates the organization's interests in

protecting karst habitat and karst species, as well as its interests in ensuring ESA protections

apply to all imperiled species, including those that do not cross state lines. The Center therefore

has a long history of defending imperiled karst species, and ensuring that the protections of the

ESA are enforced to prevent harm to their habitat.

Defenders of Wildlife participated in the last case addressing the constitutionality of

protections for the Bone Cave harvestman and other Karst invertebrates. Defenders filed an

amicus brief on behalf of multiple conservation organizations in *GDF Realty Invs., Ltd. v.*

*Norton*, 326 F.3d 622 (5th Cir. 2003), *cert. denied*, 545 U.S. 1114 (2005). Defenders has also

filed briefs in support of federal constitutional authority for wildlife protection in similar cases in

the Fourth, Ninth, Tenth, Eleventh, and the D.C. Circuit. *U.S. Fish & Wildlife Serv. v. People for*

*the Ethical Protection of Property Owners*, No. 14-4151 (10th Cir. argued Sept. 28, 2015); *San*

*Luis & Delta-Mendota Water Auth. v. Salazar*, 638 F.3d 1163 (9th Cir. 2011) *cert. denied sub*

*nom. Stewart & Jasper Orchards v. Salazar,* 132 S. Ct. 498 (2011); *Alabama-Tombigbee Rivers*

*Coal. v. Kempthorne*, 477 F. 3d 1250 (11th Cir. 2007), *cert. denied*, 552 U.S. 1097 (2008); *Nat'l*

*Ass'n of Home Builders v. Babbitt,* 130 F.3d 1041 (D.C. Cir. 1997), *cert. denied*, 524 U.S. 937

(1998); *Gibbs v. Babbitt*, 214 F.3d 483 (4th Cir. 2000), *cert. denied sub nom. Gibbs v. Norton*,

531 U.S. 1145 (2001). Defenders' participation in these cases demonstrates its organizational

interest in ESA protections for the Bone Cave harvestman and all imperiled species.

The Conservation Groups took these actions due to their concerns with and interests in

karst habitat, karst-dependent species, and the application of the ESA to intrastate plants and

animals, giving them an unmistakable interest in the habitat and legal rights at stake here. *Diaz v. S. Drilling Corp.,* 427 F. 2d 1118, 1124 (5th Cir. 1970).

## III.   ARGUMENT

### A.   <u>Intervention is Proper as a Matter of Right</u>

Rule 24(a) of the Federal Rules of Civil Procedure states:

> On timely motion, the court must permit anyone to intervene who ... claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

F. R. Civ. P. 24(a). The Fifth Circuit has developed a four-part test to apply this rule, breaking it down to the following: "(1) timeliness, (2) an interest relating to the action, (3) that the interest would be impaired or impeded by the case, and (4) that the interest is not adequately represented by the parties." *In re Lease Oil Antitrust Litigation*, 570 F.3d 244, 247 (5th Cir. 2009) (citing *Sierra Club v. Espy*, 18 F.3d 1202, 1204-05 (5th Cir. 1994)). An intervenor must meet these four criteria to qualify for intervention of right, but Rule 24 "is to be liberally construed, with doubts resolved in favor of the proposed intervenor." *Entergy Gulf States La. v. U.S. Envtl. Prot. Agency,* 817 F.3d 198, 203 (5th Cir. 2016) (quoting *In Re Lease Oil Antitrust Litig.* at 248 (internal quotation marks omitted).[2]

### 1.   Intervention Is Timely

Timeliness "depends on a review of all the circumstances," and the Fifth Circuit specifies four factors to consider: (1) when intervenors learned about their stake in the case; (2) prejudice

---

[2] The Fifth Circuit holds that intervenors do not need "to independently possess standing where the intervention is into a *subsisting and continuing* Article III case or controversy and the ultimate relief sought by the intervenors is also being sought by at least one subsisting party with standing to do so." *Newby v. Enron Corp.*, 443 F.3d 416, 422 (5th Cir. 2006) (emphasis in original) (internal quotation omitted). Nevertheless, the Conservation Groups' declarations in support of intervention also demonstrate the organizations' standing in this case.

to existing parties from proposed intervenors' failure to move for intervention sooner; (3) prejudice to proposed intervenors if a motion for intervention is denied; and (4) the existence of unusual circumstances that weigh either for or against intervention. *Trans Chem. Ltd. v. China Nat'l Machinery Imp. & Exp. Corp.*, 332 F.3d 815, 822 (5th Cir. 2003). However, "[t]hese factors are a framework and not a formula for determining timeliness," *John Doe No. One v. Glickman*, 256 F.3d 371, 376 (5th Cir. 2001), and "[t]he analysis is contextual; absolute measures of timeliness should be ignored." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994).

The Conservation Groups easily meet the test for intervention here, particularly in light of the circumstances and context of their proposed intervention. Namely, Conservation Groups bring this motion quickly upon learning of their interests at stake and before intervention becomes prejudicial to existing parties or impedes related proceedings. In light of this and the unique circumstances involved in this case, intervention should be granted.

### i.   Intervention Is Timely On Plaintiffs' Claims

Plaintiffs initiated this case on December 15, 2015, and amended their complaint on June 28, 2016. The administrative record was lodged just over a month ago (ECF 38), and no substantive motions are pending on Plaintiffs' claims nor have any been decided to date. No party moved for discovery and/or to supplement the administrative record before the time to do so expired (Scheduling Order, ECF 35). In moving to intervene, Conservation Groups do not seek to re-open a discovery window, supplement the administrative record, or ask this Court to reconsider any phase of this litigation that has already concluded—making intervention timely and proper, with no prejudice to the existing parties. *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n,* 2016 U.S. App. LEXIS 15378, at *3 (5th Cir. Aug. 22, 2016) ("Because the

Association sought intervention before discovery progressed and because it did not seek to delay or reconsider phases of the litigation that had already concluded, the Association's motion was timely.") (internal citation omitted). The standards for timely intervention are therefore clearly met here for Conservation Groups.

Timeliness becomes even less questionable when considering recent developments in the case and how these developments could impact the Conservation Groups' interests. When they learned about this case earlier this year, the Conservation Groups reasonably expected FWS to vigorously defend its decision to reject the petition to delist the Bone Cave harvestman—thereby protecting the Conservation Groups' interests. This defense appeared to be on track when Federal Defendants filed a motion to dismiss based on lack of jurisdiction and standing (ECF 16), but the Groups' confidence level eroded after Federal Defendants voluntarily dismissed their motion to dismiss (ECF 21) and have filed no other defensive motions to date.

Moreover, Federal Defendants recently entered into formal settlement negotiations with Plaintiffs, and pursuant to their stipulated motion (ECF 37) and this Court's order dated September 29, 2016 (ECF 39), the proceedings on all of Plaintiffs' claims are now stayed while settlement negotiations proceed. The fact that Federal Defendants formalized the settlement negotiations and stipulated to stay the proceedings signals they may be willing to make concessions on their decision to reject the de-listing petition, which may be contrary to the Conservation Groups' interest in seeing that the species remains fully protected under the ESA.

Now, Federal Defendants have filed a Motion for Voluntary Remand with respect to Plaintiffs' claims. (ECF 45). Conservation Groups' take no position on this motion, but it only highlights the recent concern that Conservation Groups' interests in the species may not be fully represented.

These facts are important because "[t]he timeliness clock does not start running until the putative intervenor also knows that class counsel will not represent his interest," *Poynor*, 570 F.3d at 248 (internal citation omitted), and until recently, Conservation Groups "legitimately believed" FWS would fully defend its decision on the delisting decision. *Sierra Club v. Espy*, 18 F. 3d 1202, 1206 (5th Cir. 1994) ("A better gauge of promptness is the speed with which the would-be intervenor acted when it became aware that its interests would no longer be protected by the original parties.") (internal citation omitted).  The Conservation Groups moved to file this intervention motion quickly upon learning their interests may no longer be protected, making their intervention timely and proper here. *Id.*

### ii.    Intervention Is Timely on Plaintiff-Intervenors' Claims

Plaintiff-Intervenors filed their complaint and motion to intervene on December 16, 2015 (ECF 2), the day after Plaintiffs initiated the case, and this Court granted them leave to intervene on April 26, 2016 (ECF 17).  The proceedings on Plaintiff-Intervenors' claims are moving forward and are not stayed as they are with Plaintiffs' claims, but the proceedings are at an early stage with no substantive issues decided and no motions pending.  Pursuant to the court's scheduling order, Plaintiff-Intervenors' filed a motion for summary judgement on November 15, 2016. If granted intervention, the Conservation Groups would file their opposition and cross-summary judgment motion in the same timeframe as Federal Defendants, by January 13, 2017 (ECF 35).  Thus, the Conservation Groups' intervention at this early stage would not prejudice the existing parties, nor would it delay any proceedings, and this motion squarely satisfies the timeliness requirements of Rule 24.

In fact, when Plaintiff-Intervenors moved to intervene in this matter, they cited several Fifth Circuit cases for the proposition that a motion for intervention is timely if made before trial

and any final judgment, and that intervention motions made before final judgment has been entered are normally granted.  Plaintiff-Intervenors' Motion to Intervene (ECF 2) at 6 (citing *John Doe No. 1 v. Glickman*, 256 F.3d 371, 377 (5th Cir. 2001); *Edwards v. City of Hous.*, 78 F.3d 983, 1001 (5th Cir. 1996)).  Allowing Conservation Groups to intervene at this stage would therefore be consistent with Plaintiff-Intervenors' arguments on timeliness, given that this case is far from final judgment with no substantive issues decided and no motions pending.

For all of these reasons, and because "no one would be hurt and greater justice would be attained" by allowing Conservation Groups to intervene to protect their interests regarding Plaintiff-Intervenors constitutional claims, the timeliness factor weighs in favor of granting Conservation Groups' motion for intervention.  *Espy*, 18 F.3d at 1205-06 (internal quotation omitted).

### 2.  The Conservation Groups Have Legally Protected Interests At Stake

The Conservation Groups also clearly have "an interest relating to the property or transaction that is subject of the action." Fed. R. Civ. P. 24(a)(2); *see also In re Lease Oil Antitrust Litig.*, 570 F.3d at 250.  The Fifth Circuit holds that proposed intervenors must point to an interest that is "direct, substantial, [and] legally protectable." *Ross v. Marshall*, 426 F.3d 745, 757 (5th Cir. 2005) (quoting *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir. 1984) (en banc)).  The Fifth Circuit also holds that "the interest 'test' is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process," *id.* (quoting *Espy*, 18 F.3d at 1207).  To pass the test, "[a]ll that is required ... is an interest in the property or other rights that are at issue, provided the other elements of intervention are present." *Diaz v. Southern Drilling Corp.*, 427 F. 2d 1118, 1124 (5th Cir. 1970).

As set forth above, the Conservation Groups' missions are to protect species and the ecosystems upon which these species depend, as well as the legal framework that protects them, giving them a direct and substantial interest in the specific agency action challenged here, as well as the constitutional claims made by Plaintiff-Intervenors. Greenwald Decl. ¶ 3.  Ladd Decl. ¶ 4; Senatore Decl. ¶ 4, 6-7.  Moreover, the Conservation Groups have worked extensively to protect karst-dependent species and karst habitat in Texas Hill Country, and also to protect and recover the Bone Cave harvestman in particular, evidencing a direct interest in the claims being made by Plaintiffs. *See* Ladd Decl. ¶ 6-14; Senatore Decl. ¶ 7.

Indeed, in many respects this case is only before this Court because the Conservation Groups acted to protect these interests.  Travis Audubon petitioned for the endangered listing of the Bone Cave harvestman that is the central issue here, and the threats to the harvestman that existed when Travis Audubon filed the petition persist today, with its habitat still subject to loss caused by residential and commercial development.  Continuing to protect the harvestman from harm is consistent with Travis Audubon's mission to conserve the region's native habitats and the species that rely on them.  Ladd Decl. ¶ 8.

The Center also has demonstrated a long-standing interest in the survival and recovery of karst species like the Bone Cave harvestman, taking many actions to protect and restore karst species and habitat in Texas Hill Country over the years, as set forth above.  For example, the Center has filed actions to protect habitat for several karst invertebrates, including for harvestman species.  77 Fed. Reg. 8450, 8452 (Feb. 14, 2012).  The Center has also challenged permits that allowed karst invertebrates to be harmed or killed by residential and commercial development. *Ctr. for Biological Diversity v. U.S. Fish and Wildlife Serv.,* 202 F. Supp 2d 594 (W.D. Tex. 2002).   Moreover, the Center has a long history of defending the ESA and ensuring

that its protections are not undermined by attempts to limit its reach, as Plaintiff-Intervenors are attempting here.  Greenwald Decl. ¶ 10.

Similarly, Defenders of Wildlife has a long history of support and activism on behalf of threatened and imperiled species. Senatore Decl. ¶ 3-4. This includes amicus curiae participation in prior litigation that specifically addressed and governs the claims raised here by Plaintiff-Intervenors. Senatore Decl. ¶ 7; Brief for Environmental Defense and Defenders of Wildlife as Amici Curiae Supporting Defendants, *GDF Realty Invs., Ltd. v. Norton*, 326 F.3d 622 (5th Cir. 2003). Defenders works nationwide to ensure the conservation of wildlife, including support for the laws and regulations that protect them. Senatore Decl. ¶ 6-7.

The Conservation Groups initiated these actions due to their particularized concerns with and interests in karst habitat, karst-dependent species, and the application of the ESA to intrastate plants and animals, giving them an unmistakable interest in the rights at issue here. *Diaz v. S. Drilling Corp.,* 427 F. 2d 1118, 1124 (5th Cir. 1970).  These long-standing interests provide a sufficient basis for intervention in this case. *See, e.g., Idaho Farm Bureau Fed'n. v. Babbitt,* 58 F.3d 1392, 1397 (9th Cir. 1995) ("[a] public interest group is entitled as a matter of right to intervene in an action challenging the legality of a measure it had supported."); *Coal. of Ariz./N.M Ctys. for Stable Econ. Growth v. Dep't of the Interior*, 100 F.3d 837, 841-44 (10th Cir. 1996) (individual's involvement with a species through his activities as a photographer, amateur biologist, naturalist, and conservation advocate amounted to sufficient interest for purpose of intervention in litigation covering a species' protection under the ESA); *Sagebrush Rebellion, Inc. v. Watt,* 713 F.2d 525, 526-528 (9th Cir. 1983) (environmental groups' "environmental, conservation and wildlife interests" were sufficient for intervention as a matter of right).

### 3.   This Action Threatens to Impair Applicant-Intervenors' Interests

Rule 24(a)'s "impairment" requirement concerns whether, as a practical matter, the denial of intervention will impede the prospective intervenors' ability to protect their interests in the subject of the action. Fed. R. Civ. P. 24(a)(2). As the Advisory Committee Notes for the 1966 amendments to Rule 24(a) explain, "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene."

There is no question that the disposition of Plaintiffs' and Plaintiff-Intervenors' claims have the potential to impair the Conservation Groups' interests in protecting karst species, including the harvestman, and their habitat, as well as the protections afforded to other imperiled intrastate species under the ESA. Their interests would be directly and adversely affected if Plaintiffs and/or Plaintiff-Intervenors receive their requested relief, which aims to eliminate ESA protections not only for the Bone Cave harvestman, but also for other intrastate species throughout the nation.

Courts have repeatedly found an environmental group's interest in a particular species that has been targeted for delisting sufficient to sustain intervention in lawsuits such as this, and it is important to reiterate here that Travis Audubon was the party that petitioned to have the species listed in the first instance, evidencing a clear interest in protecting the species. In *Idaho Farm Bureau Federation*, the Ninth Circuit held that a disposition of the action in favor of plaintiffs resulting in the delisting of the Bruneau Hot Springs snail "would impair [intervenor's] ability to protect their interest in the Springs Snail and its habitat." 58 F.3d at 1398. In *Coalition of Arizona/New Mexico Counties for Stable Economic Growth*, the Tenth Circuit held that intervenor's interest in the protection of the Mexican spotted-owl would, "as a practical matter,"

be impaired by a ruling in favor of the plaintiffs to delist the owl "by the stare decisis effect of the district court's decision, not to mention the direct effect of a possible permanent injunction." 100 F.3d at 844; *see also Sierra Club v. Espy*, 18 F.3d 1202, 1207 (5th Cir. 1994) (holding that timber trade associations could intervene in lawsuit challenging the legality of certain logging practices because "an adverse resolution of the action would impair their ability to protect their interest" because of "stare decisis effect of the district court's judgment").

Further, the Conservation Groups and their members and staff would be harmed both professionally and personally if the Bone Cave harvestman is no longer protected under the ESA. Greenwald Decl. ¶ 6, 7; Ladd Decl. ¶ 10-12; Senatore Decl. ¶ 7, 10-12. In addition, if the Conservation Groups are not allowed to intervene in this action to defend the constitutionality of the ESA, their ability to carry out their missions will be significantly impaired. Greenwald Decl. ¶ 8; Ladd Decl. ¶ 15; Senatore Decl. ¶ 7, 12.

Because the Conservation Groups are so situated that the disposition of this action may as a practical matter impair their ability to protect their interests in both the Bone Cave harvestman and the ESA, the Conservation Groups satisfy the third requirement of intervention as of right.

### 4.      Conservation Groups' Interests Are Not Represented By Other Parties

Despite the fact that Conservation Groups often disagree with FWS's decisions and positions when it comes to imperiled species and enforcement of the ESA, Conservation Groups reasonably expected FWS to vigorously defend its decision to reject the petition to delist the Bone Cave harvestman—thereby protecting the Conservation Groups' interests. This defense appeared to be on track when Federal Defendants filed a motion to dismiss based on lack of jurisdiction and standing (ECF 16), but the Conservation Groups' confidence level eroded after

Federal Defendants voluntarily dismissed their motion to dismiss (ECF 21), initiated settlement discussions (ECF 37), stayed the proceedings (ECF 39), and have now filed a motion for voluntary remand (ECF 43, 45).

The Conservation Groups expected the parties would try to work out their disagreements through such discussions, but the fact that Federal Defendants actions signal they may be willing to make concessions on their decision to reject the de-listing petition elevates Conservation Groups' concern that Federal Defendants will not adequately represent their interests in ensuring the Bone Cave harvestman remains protected under the ESA.

Furthermore, while Conservation Groups remain hopeful that Federal Defendants will defend against the constitutional claims brought by Plaintiff-Intervenors, this issue is fundamental to the work that Conservation Groups do; therefore, it would be dangerous to assume that the Federal Defendants will fully represent the Conservation Groups' interests—not only here, but if this matter is elevated on appeal.  In fact, several Fifth Circuit decisions have noted that while a government agency may represent the public interest, that does not mean that the specific interests of other entities or organizations, such as the interests' of Conservation Groups here, are adequately represented by government entities for purposes of intervention. *See Sierra Club v. Glickman*, 82 F.3d 106, 110 (5th Cir. 1996) (per curiam) (representing the public interest does not necessarily include the intervenor's narrower interest); *Sierra Club v. Espy*, 18 F.3d 1202, 1207-08 (5th Cir. 1994) (discussing how the government must represent the broad public interest, from which the narrow concerns of private parties are distinguishable). The Conservation Groups' interests are therefore not represented by other parties in this matter, and intervention is warranted.

## B.    In the Alternative, Permissive Intervention Is Warranted

Should this Court find that Conservation Groups are not entitled to intervene as of right

under Rule 24(a), they ask this Court to grant permission to intervene pursuant to Federal Rule of

Civil Procedure 24(b), which provides as follows:

> On timely motion, the court may permit anyone to intervene who . . . has a claim
> or defense that shares with the main action a common question of law or fact . . .
> In exercising its discretion, the court must consider whether the intervention will
> unduly delay or prejudice the adjudication of the original parties' rights.

Fed. R. Civ. P. 24(b)(1) and (3). Intervention under Rule 24(b) is left to the sound discretion of

the district court. *Edwards v. City of Hous.*, 78 F.3d 983, 999 (5th Cir. 1996).

The Conservation Groups meet these requirements. As discussed above in the context of

intervention as of right, the intervention application is timely and will not delay the proceedings,

therefore Plaintiff and Plaintiff-Intervenors will not be prejudiced by Conservation Groups'

intervention in this early phase of the proceeding. Moreover, in order to protect their interests,

the Conservation Groups must raise defenses that share common questions of law and fact with

Plaintiffs' and Plaintiff-Intervenors' claims, as they address the same matters Plaintiffs and

Plaintiff-Intervenors raised as to the protection of the Bone Cave harvestman and the reach of the

ESA. Therefore, permissive intervention is warranted.


## IV.    CONCLUSION

For the foregoing reasons, the Conservation Groups should be allowed to intervene in this

matter in order to protect their interests in ensuring that the Bone Cave harvestman remains

protected under the ESA, and to defend the constitutionality of FWS's authority to protect

intrastate species under the ESA.

Dated: November 21, 2016

Respectfully submitted,

Jeff Mundy (Texas Bar No. 14665575)
THE MUNDY FIRM PLLC
4131 Spicewood Springs Road
Suite O-3
Austin, Texas 78759
Phone: 512-334-4300
Email: jeff@jmundy.com


Jared M. Margolis (*Pro Hac Vice* Applicant)
(Oregon Bar No. 146145)
CENTER FOR BIOLOGICAL DIVERSITY
2852 Williamette Street #171
Eugene, OR 97405
Phone: (802) 310-4054
Email: jmargolis@biologicaldiversity.org


Jason C. Rylander (*Pro Hac Vice* Applicant)
(Virginia Bar No. 45827)
DEFENDERS OF WILDLIFE
1130 17th Street, N.W.
Washington, D.C. 20036
Telephone: (202) 682-9400
Facsimile: (202) 682-1331
jrylander@defenders.org

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of (title of document) *Motion to Intervene* was served by (method of delivery) *E-mail* on (date) *11-22-16* to: *All Counsel of Record*

Name: _____
Fax/E-Mail _____
Address: _____
_____

Name: _____
Fax/E-Mail _____
Address: _____
_____

Name: _____
Fax/E-Mail _____
Address: _____
_____

Name: _____
Fax/E-Mail _____
Address: _____
_____

Name: _____
Fax/E-Mail _____
Address: _____
_____

Signed Name: *Jeffery Mundy*
Printed Name: *Jeffery Mundy*