IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| AMERICAN STEWARDS OF LIBERTY, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DEPARTMENT OF INTERIOR, *et al.*,<br><br>Defendants, | Civil No. 1:15-cv-01174-LY |

## DECLARATION OF MICHAEL P. SENATORE

I, MICHAEL P. SENATORE, declare as follows:

1. I am over 21 years of age, have personal knowledge of the matters asserted in this declaration, and if called upon to testify would state the same.

2. I have been a member of Defenders of Wildlife ("Defenders") for nearly 20 years. I have served as a Staff Attorney, Litigation Director and currently Vice President for Conservation Law. I have held my current position for seven years. In my current position, I oversee Defenders' legal and policy work to protect endangered and threatened species and their habitats. Additionally, I work to protect and strengthen the environmental laws and regulations that provide a basis for wildlife conservation in the United States, particularly the Endangered Species Act ("ESA").

3. Defenders of Wildlife is a not-for-profit conservation organization recognized as one of the nation's leading advocates for wildlife and their habitat. Founded in 1947, Defenders is headquartered in Washington, D.C., with field offices and staff in Alaska, Arizona, California,



EXHIBIT A

Colorado, Florida, Idaho, Montana, New Mexico, North Carolina, and Washington. Defenders supports approximately 1.2 members and activists, including nearly 39,600 supporters in Texas.

4. Defenders is dedicated to preserving wild animals and plants and emphasizing appreciation and protection for all species in their ecological roles within the natural environment. Defenders accomplishes its goals through education, research, advocacy, and, when necessary, litigation. Defenders advocates sound scientifically-based approaches to wildlife conservation that are geared to restoring imperiled species and preventing others from becoming threatened or endangered.

5. Defenders' members, both in Texas and nationwide, derive aesthetic, recreational, educational, scientific, and spiritual benefits from viewing and observing highly imperiled species in their natural habitats. On behalf of its members in Texas and nationwide, Defenders has a long history of advocating for the protection of rare species in Texas, including the whooping crane, dunes sagebrush lizard, lesser prairie chicken, golden cheeked warbler, pygmy owl, and karst invertebrates and other cave dwelling creatures.

6. Defenders tracks not only the biological status of listed species but also legislative and regulatory initiatives that may affect species conservation. We do this to ensure that our members can continue to explore their aesthetic, recreational, educational, scientific, and other personal interests in wild species and their natural habitats.

7. To that end, Defenders has a keen interest in maintaining a legal system that recognizes the ability of Congress to protect endangered wildlife under the ESA and other federal laws. As an intervenor or *amicus curiae*, Defenders has successfully defended federal wildlife protections in numerous appellate cases at the intersection of environmental and constitutional law, including *GDF Realty Invs., Ltd. v. Norton*, 326 F.3d 622 (5th Cir. 2003),

*cert. denied*, 545 U.S. 1114 (2005); *Aransas Project v. Shaw*, 756 F.3d 801 (5th Cir.), *opinion amended and superseded*, 775 F.3d 641 (5th Cir. 2014), and *cert. denied*, 135 S. Ct. 2859 (2015); *San Luis & Delta-Mendota Water Auth. v. Salazar*, 638 F.3d 1163 (9th Cir. 2011) *cert. denied sub nom. Stewart & Jasper Orchards v. Salazar*, 132 S. Ct. 498 (2011); *Alabama-Tombigbee Rivers Coal. v. Kempthorne*, 477 F. 3d 1250 (11th Cir. 2007), *cert. denied*, 552 U.S. 1097 (2008); *Nat'l Ass'n of Home Builders v. Babbitt*, 130 F.3d 1041 (D.C. Cir. 1997), *cert. denied*, 524 U.S. 937 (1998); *Gibbs v. Babbitt*, 214 F.3d 483 (4th Cir. 2000), *cert. denied sub nom. Gibbs v. Norton*, 531 U.S. 1145 (2001).

8. This case concerns a challenge to the U.S. Fish and Wildlife Service's ("Service") denial of a petition to remove the Bone Cave harvestman from the list of federally threatened and endangered species.

9. Plaintiff-Intervenors have raised additional claims. Their complaint alleges that the ESA is unconstitutional as applied to the Bone Cave harvestman, because the species is found in only one state and is not traded in interstate commerce. According to Plaintiff-Intervernors, Congress lacks the authority under the Constitution's Commerce Clause to protect the Bone Cave harvestman. A ruling for Plaintiff-Intervernors, however, could apply to similarly-situated intra-state species, which in fact comprise a majority of species protected under the ESA.

10. I have reviewed relevant documents from the Service as well as Plaintiffs' petition to delist the Bone Cave harvestman. I am familiar with the threats to the species, which include habitat loss due to development and water contamination. Removal of the Bone Cave harvestman from the protections of the ESA could hasten further activities that threaten the species with extinction.

11. Any activities that could result in the take of the Bone Cave harvestman or loss of its habitat would be of significant concern to Defenders and its members, as it could harm academic, recreational, conservation, and aesthetic interests in the species and its ecosystem.

12. Moreover, the claims in this case that speak to the broader power of Congress to protect and conserve imperiled species are of grave concern to Defenders and its members. Although such arguments have been rejected by the Fifth Circuit in *GDF Realty Invs., Ltd. v. Norton*, 326 F.3d 622 (5th Cir. 2003), and four other federal circuits, a ruling for Intervenors in this case would have national implications and could very seriously undermine the conservation of many species of concern to Defenders and its members.

13. My interests, along with the interests of Defenders and its members in Texas and around the country, would be seriously harmed if this court ruled in favor of Plaintiffs and Plantiff-Intervernors in this matter.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 18th day of November, 2016, in Washington, D.C.

_____
MICHAEL P. SENATORE

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

|  |  |
|---|---|
| AMERICAN STEWARDS OF LIBERTY, *et al.*, <br><br>　　Plaintiffs, <br><br>　　　　v. <br><br>DEPARTMENT OF INTERIOR, *et al.*, <br><br>　　Defendants, | ) <br> ) <br> ) <br> ) <br> ) Civil No. 1:15-cv-01174-LY <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

DECLARATION OF DAVID NOAH GREENWALD

I, DAVID NOAH GREENWALD, declare as follows:

　　1. I am over 21 years of age, have personal knowledge of the matters asserted in this declaration, and if called upon to testify would state the same.

　　2. I have been a member and a Conservation Biologist with the Center for Biological Diversity ("the Center"), and I am currently the Endangered Species Director at the Center. I have been involved in varying capacities with the Center for nearly 20 years. In my current position as Endangered Species Director, I am and have been responsible for reviewing the status of species and ecosystems, working to protect species and their habitats, as well as to protect the Endangered Species Act ("ESA") itself to maintain the protections it provides for imperiled plants and animals, including the Bone Cave harvestman.

　　3. The Center is a nonprofit corporation founded in 1989, dedicated to the protection of endangered species and wild places. The Center has offices and staff in Oregon, Washington,



New Mexico, Arizona, Washington D.C., Vermont, Minnesota, and California. The Center has more than 1.1 million members and online activists. Center staff and its members are dedicated to the preservation, protection, and restoration of biodiversity, native species, ecosystems, and public lands through science, policy, education, and environmental law. Development and loss of habitat have a profound impact on native ecosystems and the species that depend upon them. The ESA has been vital in ensuring protection for species at risk of extinction. As a result, the Center tracks the status of species, as well as attacks on the ESA itself, and where necessary works to ensure that environmental laws and regulations are sufficient to protect species, ecosystems, and the interests of the Center's members and local communities, and their enjoyment of the natural world.

  4. I understand that this case involves a challenge to the U.S. Fish and Wildlife Service's ( "Service") finding that Plaintiffs' petition failed to present substantial scientific or commercial information to indicate that removing the Bone Cave harvestman ("harvestman") from the list of endangered species under the ESA may be warranted. I further understand that Plaintiff-Intervenors have challenged the constitutionality of the ESA as it applies to protecting the harvestman from development, arguing that such actions are outside of FWS's Commerce Clause authority.

  5. I have reviewed the pertinent documents from the Service, Plaintiffs and Plaintiff-Intervenors, and I am familiar with the harvestman and the threats confronting it. The Service has found that the continued existence of the harvestman is jeopardized by development that results in habitat loss and contamination of water, which threatens the integrity of karst ecosystems on which the species depends. Plaintiffs appear to have petitioned for the delisting of harvestman to conduct the types of activities in the vicinity of karst ecosystems that threaten the harvestman.

Declaration of David Noah Greenwald

6. Development that harms habitat for listed species, such as the harvestman, is of great concern to the Center and its members, as these activities threaten the survival of species that are the focus of the Center's work.

7. The Center and its members and staff derive academic, recreational, conservation, and aesthetic benefits from rare species' existence in the wild. The ability to study and enjoy the Bone Cave harvestman and its habitat is entirely dependent on the continued existence of the species. Any action that interferes with and/or harms the harvestman also harms the Center's interest and enjoyment in this species.

8. Moreover, the Plaintiff-Intervenors in this case have asserted that the application of ESA protections to the harvestman violates the constitutional limitations on federal actions taken pursuant to the Commerce Clause. While several courts have addressed this issue and consistently found that the ESA properly regulates activities that may harm listed species pursuant to the Commerce Clause, this direct attack on the constitutionality of the ESA, if successful, would undermine protections for listed species that the Center has worked hard to protect.

9. The Center has demonstrated a long-standing interest in the survival and recovery of karst species like the Bone Cave harvestman, and has been involved in several actions to protect karst habitat and karst species from harm. For example, in March 2016, the Center filed an administrative petition with the Texas Parks and Wildlife Department to ban the use of gasoline and other toxic substances to hunt snakes—filed largely due to the Center's concerns with the adverse effects to karst habitat and species, including karst invertebrates. Further, in 2000, the Center filed a successful action to secure critical habitat designations for nine karst invertebrates, and in 2007 the Center filed a separate lawsuit that prompted FWS to expand critical habitat

3

Declaration of David Noah Greenwald

protections for several karst species, including the critical habitat designation for a harvestman species.

10. The Center also has a long history of defending the ESA and has been involved in cases where attacks were made on the constitutionality of the ESA. Further, the Center has extensively participated in both regulatory and legislative processes to protect the ESA from attacks as to its reach and viability. The ongoing vitality of the ESA is central to the Center's work and mission.

11. My interests, along with the Center's and its members' interests, would be seriously degraded and harmed if this court ruled in favor of Plaintiffs and Plaintiff-Intervenors in this matter, striking down FWS's determination on the delisting petition and finding that ESA protections do not apply to this imperiled species under the Commerce Clause.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 11th day of November, 2016, in Portland, Oregon,

**Noah Greenwald**
Digitally signed by Noah Greenwald
DN: cn=Noah Greenwald, o=Center for Biological Diversity, ou=Endangered Species Program, email=ngreenwald@biologicaldiversity.org, c=US
Date: 2016.11.11 11:41:44 -08'00'

DAVID NOAH GREENWALD

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| AMERICAN STEWARDS OF LIBERTY, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) Civil No. 1:15-cv-01174-LY |
| v. | ) ) ) |
| DEPARTMENT OF INTERIOR, *et al.*, | ) ) |
| Defendants, | ) ) ) ) ) |

## DECLARATION OF CLIFTON LADD

I, Clifton Ladd, declare as follows:

1. I am over 21 years of age, have personal knowledge of the matters asserted in this declaration, and if called upon to testify would state the same.

2. I am currently employed as a biologist and environmental consultant with Blanton & Associates, in Austin, Texas.

3. I am member of the Board of Directors of the Travis Audubon Society. I have been a member of Travis Audubon since 1976 and Board member since 2009.

4. Travis Audubon is an independent chapter of the National Audubon Society, with offices in Austin, Texas. Travis Audubon is a non-profit corporation with approximately 1,300 members that works to conserve wildlife habitat, recognizing the vital connection between wildlife habitat and the ecological balance necessary for healthy, sustainable, and habitable communities. Travis Audubon works to promote the enjoyment, understanding, and conservation

**EXHIBIT C**

of native habitats and the species that rely on them through land conservation, habitat restoration, environmental education, and conservation advocacy.

5. I understand that this case involves a challenge to the U.S. Fish and Wildlife Service's ("FWS") finding that Plaintiffs' de-listing petition failed to present substantial scientific or commercial information indicating that removing the Bone Cave harvestman ("harvestman") from the list of endangered species under the Endangered Species Act ("ESA") may be warranted. I further understand that Plaintiff-Intervenors have challenged the constitutionality of the ESA as it applies to protecting the harvestman, arguing that such protections are outside of FWS's Commerce Clause authority.

6. On February 8, 1985, Travis Audubon formally petitioned for the listing of *Texella reddelli* as endangered under the ESA. The FWS first listed the Bone Cave harvestman (now known as *T. reyesi*) as endangered in 1988 under the name Bee Creek Cave harvestman (*T. reddelli*) (53 Fed. Reg. 36,029 (Sept. 15,, 1988)). In 1993, the FWS recognized the Bone Cave harvestman (*T. reyesi*) as a distinct species and published a final rule recognizing the endangered status of both species (56 Fed. Reg. 43,818 (Aug. 18, 1993)).

7. Travis Audubon petitioned to list the harvestman and other karst species to protect them and their habitat from destruction. The petition evidences that Travis Audubon was concerned with the potential harm that development would have on the sensitive karst ecosystems in the region, noting the negative impacts that construction activities and development would have on water quality, hydrogeology, and other environmental conditions that affect species such as the harvestman.

8. The threats to the harvestman that existed when Travis Audubon filed the petition persist today, with its habitat still subject to loss caused by residential and commercial

2

Declaration of Clifton Ladd

development. Continuing to protect the harvestman from harm is consistent with Travis Audubon's mission to conserve the region's native habitats and the species that rely on them.

9. I have a long history with efforts to protect this region and the habitat it provides for threatened and endangered species. I was the lead biologist and helped author the Balcones Canyonlands Conservation Plan ("BCCP"), which is a regional Habitat Conservation Plan ("HCP") that covers Travis County and the City of Austin, and was the first regional multi-species HCP approved in the United States. The BCCP covers impacts to the region's harvestman, among other species, and I personally authored portions of the BCCP that dealt with harvestman species. The BCCP was designed to ensure that land development did not continue to degrade the habitat that the harvestman and other karst-dependent plants and animals need to survive. The BCCP was the HCP submitted by Travis County and the City of Austin in a joint application to the FWS to secure an ESA Section 10(a) permit for the region.

10. I am familiar with the harvestman and the habitat areas on which it depends. I have visited areas where the harvestman is known to live, including caves, and I plan on returning to these areas to enjoy the biological diversity and aesthetic experience they provide. The diversity of karst invertebrate fauna in the region is important to me and members of Travis Audubon. Travis Audubon members and staff derive academic, recreational, conservation, and aesthetic benefits from rare species' existence in the wild. The ability to study and enjoy the harvestman and its habitat is entirely dependent on the continued existence of the species. Any action that interferes with and/or harms the harvestman also harms my interests, as well as the interests of Travis Audubon and its members.

11. I am familiar with the threats confronting the harvestman. FWS has found that the continued existence of the harvestman is jeopardized by development that results in habitat

3

Declaration of Clifton Ladd

loss and contamination of water, which threatens the integrity of the karst ecosystem on which the species depends. Plaintiffs appear to have petitioned for the delisting of the harvestman to conduct the types of activities in karst ecosystems that threaten the harvestman. It is these activities and the threats they pose that prompted Travis Audubon to petition for the listing of the species in the first place.

12. Development that harms the harvestman's habitat is of great concern to me personally and to the members of Travis Audubon, as these activities threaten the survival of this species that we have worked to protect.

13. Travis Audubon has a long history of protecting karst habitats and the unique species these habitats support. Travis Audubon has spent considerable time and money creating several sanctuaries in the region, including Baker Sanctuary, a 715-acre reserve with karst features, including some that have not yet been explored. Travis Audubon created these sanctuaries to preserve this native habitat and the species that rely on it, which includes karst invertebrates such as the harvestman.

14. Travis Audubon manages Baker Sanctuary as part of the Balcones Canyonlands Preserve ("BCP") that serves as the preserve system for the BCCP. Travis Audubon entered into a management agreement with Travis County on April 9, 2015 in order to further the habitat conservation goals of the BCCP.

15. My interests, along with the interests of Travis Audubon and its members, would be seriously degraded and harmed if this Court ruled in favor of Plaintiffs and/or Plaintiff-Intervenors in this matter, striking down FWS's determination on the delisting petition or finding that ESA protections do not apply to this imperiled species under the Commerce Clause.

4

Declaration of Clifton Ladd

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 15th day of November, 2016, in Austin, Texas.

_____
Clifton Ladd

Declaration of Clifton Ladd