# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| AMERICAN STEWARDS OF LIBERTY, *et al.*, | § § § § § | |
| *Plaintiffs*, | § § | CIVIL ACTION NO. 15-cv-1174-LY |
| v. | § § | |
| DEPARTMENT OF THE INTERIOR, *et al.*, | § § § | |
| *Defendants*. | § § § | |

## AMENDED COMPLAINT OF INTERVENOR JOHN YEARWOOD AND WILLIAMSON COUNTY, TEXAS

TO THE HONORABLE JUDGE OF SAID COURT:

Intervenor-Plaintiffs John Yearwood and Williamson County, Texas file this Amended Complaint against Defendants challenging the constitutionality of Endangered Species Act regulation of the Bone Cave Harvestman.

### I. EXECUTIVE SUMMARY

1. Intervenors challenge the constitutionality of the federal government to use the Interstate Commerce Clause to regulate the Bone Cave Harvestman (BCH) - a tiny arachnid that only exists underground caves in two central Texas counties, is not bought or traded in interstate commerce, and does not otherwise affect interstate commerce.

2. Intervenors own property that contains habitat for the BCH. Despite the fact that the BCH exists solely in caves located in Central Texas, and is not bought or traded in interstate commerce, the U.S. Fish and Wildlife Service asserts federal jurisdiction over the spider and its

habitat by listing the BCH as "endangered" under the Endangered Species Act (ESA), 16 U.S.C. §§ 1531-1544.

3. Intervenors challenge the constitutionality for the federal government to regulate the BCH and takes of BCH. Under the Commerce Clause, Congress may only regulate economic activities that substantially affect interstate commerce. *United States v. Morrison,* 529 U.S. 598, 608-09 (2000). Congress may only regulate non-economic activities if such regulation is necessary to vindicate an otherwise valid comprehensive economic regulatory scheme. *Gonzales v. Raich,* 545 U.S. 1 (2005); *U S. v. Whaley,* 577 F.3d. 254, 260 (5th Cir. 2009). BCH regulation is not necessary to regulate an interstate market or vindicate an otherwise valid comprehensive economic regulatory scheme. BCH takes occur only in Texas. These takes are categorically non- economic activity. Accordingly, the Commerce Clause does not justify regulating BCH takes on non-federal land.

4. Intervenors file this suit to obtain declaratory and injunctive relief against Defendants United States Department of Interior, *et al.* (collectively the "Service") to determine that ESA regulation of the BCH is unconstitutional.

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 (federal question jurisdiction); §1346(a)(2) (civil action against the United States); §2201 (authorizing declaratory relief); §2202 (authorizing injunctive relief); and 5 U.S.C. §702 (providing for judicial review of agency action under the Administrative Procedure Act).

6. Venue in this district is predicated upon 5 U.S.C. §703 and 28 U.S.C. §1391(e), in that a substantial part of the events or omissions giving rise to this claim occurred in this district. Venue is proper in the Austin Division of the Western District of Texas pursuant to 28 U.S.C. §124(d)(1).

## III. PARTIES

7. Plaintiff American Stewards of Liberty is a charitable organization under Section 501(c)(3) of the Internal Revenue Code. Its members are primarily comprised of farming and ranching families who have been stewards of the land for generations. Members of the American Stewards of Liberty own property within the areas designated as BCH habitat.

8. Plaintiffs Charles and Cheryl Shell reside at 6 West Nakoma in Round Rock, Texas 78634. Plaintiffs Charles and Cheryl Shell own property at 5601 County Road 234 in Jarrell, TX and 6868 Highway 195 in Florence, Texas 76527. Plaintiffs' property has been directly harmed by the listing of BCH and the restrictions imposed upon their property under the ESA.

9. Plaintiff Walter Sidney Shell Management Trust located at 6868 Highway 195 in Florence, Texas 76527. Plaintiff Walter Sidney Shell Management Trust owns property at 6868 Highway 195, Florence, Texas 76527. Plaintiff s property has been directly harmed by the listing of the BCH and the land use restrictions imposed upon it under the ESA.

10. Plaintiff Kathryn Heidemann resides at 190 Heiderosa Run m Georgetown, Texas 78633. Plaintiff Heidemann owns property along the West side of County Road 245 North of Ronald Reagan Boulevard located in Georgetown, Texas. Plaintiff s property has been directly harmed by the listing of BCH and the restrictions imposed upon her property under the ESA.

11. Plaintiff Robert Harrison resides at 500 Harrison Lane in Georgetown, Texas 78628. Plaintiff s property has been directly harmed by the listing of BCH and the restrictions imposed upon his property under the ESA.

12. Respondent and Defendant United States Fish and Wildlife Service (Fish and Wildlife Service) is an agency of the United States government, within the Department of Interior (Department), and has been delegated responsibility for the day-to-day administration of the ESA,

including enforcement of the regulations adopted pursuant to 16 U.S.C. § 1533. As such, the Fish and Wildlife Service is responsible for enforcing the regulation prohibiting BCH takes.

13. Respondent and Defendant Daniel M. Ashe is the Director of the Fish and Wildlife Service, and is named herein and sued in his official capacity. The Director is responsible for the administration of the ESA on behalf of the Secretary and, as such, is responsible for the enforcement of the regulation prohibiting BCH takes.

14. Respondent and Defendant Dr. Benjamin Tuggle is the Regional Director of the Fish and Wildlife Service's Southwest Region, and is named herein and sued in his official capacity. The Regional Director is responsible, in part, for the administration of the ESA within the Southwest Region. The Southwest Region includes Texas. Therefore, Dr. Tuggle is responsible for the enforcement of the regulation prohibiting BCH takes.

15. Respondent and Defendant Department of the Interior is an agency of the United States. Congress has charged the Department with administering the ESA for all terrestrial species. As the Department oversees the administration of the ESA, it is responsible for adopting the regulation prohibiting BCH takes.

16. Respondent and Defendant Sally Jewell is the Secretary of the Interior and is named herein and sued in her official capacity. The Secretary is the official charged with enacting regulations pursuant to 16 U.S.C. § 1533. As the Secretary, she is responsible for the adoption of the regulation prohibiting BCH takes.

17. Intervenor-Plaintiff John Yearwood owns approximately 865 acres of ranch-land in Williamson County. The property has been in his family since 1871. Mr. Yearwood is a retired Army veteran. He lives on the above-mentioned property with his family. His wife teaches Sunday school at a nearby church and was president of the local PTA. In 1971, the Texas Department of

Agriculture designated Yearwood's property as a "Family Land Heritage Property ". This designation is given to agricultural properties that have been in the same family for at least 100 years. The Yearwoods have three BCH sites on their property. Mr. Yearwood moved to intervene in this lawsuit to protect his liberty and property interest in using his land containing BCH habitat. His motion to intervene is still pending before this Court.

18. Intervenor Plaintiff Williamson County, Texas (the County) is a governmental entity located in central Texas. The County owns and manages land with BCH habitat. Moreover, the County provides health, safety, and welfare services to its residents that also have BCH habitat on their property. The County has been on the forefront of conservation efforts to protect the BCH and other endangered species within its borders. It owns several caves that it uses as refuges for the BCH and other endangered species. The County currently spends significant time and resources on mitigation and other measures to preserve the BCH. The County moved to intervene in this lawsuit to protect its statutory and property interests. The County's motion to intervene is still pending before this Court. Williamson County has all statutory duties regarding land within its jurisdiction delegated to it by the Texas Legislature. TEX. CONST. ART. IX; TEX. LOCAL GOV'T. A majority vote of the Williamson County Commissioners Court seated on December 1, 2015, approved its participation as a party in this lawsuit.

## IV. STATEMENT OF FACTS

### A. THE ENDANGERED SPECIES ACT

19. The ESA grants the Service the authority to list as endangered "any species which is in danger of extinction throughout all or a significant portion of its range," as well as authority to list as threatened "any species which is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." 16 U.S.C. §§ 1532, 1533.

20. Consequences of ESA listing include potential civil and criminal penalties. 16 U.S.C. § 1540(a), (b). Also, property owners must consult with the Service to receive approval to conduct activities on their property, such as laying an irrigation pipe across a creek, which the delay in approval interferes with their ability to conduct said activities. 16 U.S. Code § 1539

21. Section 9 of the ESA lists acts that are prohibited with respect to endangered species, including the "take" of any endangered species. 16 U.S.C. § 1538(a)(l)(B). "Take" means to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any of these activities. 16 U.S.C. § 1532(19).

**B.     THE BONE CAVE HARVESTMAN**

22. The BCH is a small arachnid that lives solely in caves and voids north of the Colorado River in Travis and Williamson counties, Texas. 53 Fed. Reg. 36,029-30.

23. Because the BCH is limited to isolated caves, BCH takes do not have a substantial effect on the ecosystem as a whole. *See,* 53 Fed. Reg. 36,030 ("This fragmentation of habitat has resulted in the isolation of groups of caves that have developed their own, highly localized faunas.").

24. There is no commercial market for the BCH. Likewise, BCH takes do not have a substantial effect on other species that are bought or traded in interstate commerce.

25. In 1988, the Service listed the BCH as endangered under 16 U.S.C. § 1533. 53 Fed. Reg. 36,029.

26. The Service specifically stated that overutilization of the BCH was not a justification for its listing under the ESA. 53 Fed. Reg. 36,031.

27. On June 1, 2015, a full year after Plaintiffs submitted a Delisting Petition, the Service announced a Negative 90-Day Finding, refusing to remove the BCH from the Endangered Species List. 80 Fed. Reg. 30,990.

28. On May 4, 2017, the Service reissued the same Negative 90-Day Finding, following a December 22, 2016 court order (Dkt. No. 92) granting Defendants' Motion for Voluntary Remand and staying the case pending further order of the court.

## C. STANDING

### 1. John Yearwood

29. Intervenor Yearwood has standing to bring suit because the BCH listing-and the resulting prohibition on BCH takes-inhibits his ability to fully use, maintain, and enjoy the portions of his property that lay in and around BCH habitat. These restrictions affect Mr. Yearwood in a "concrete and personal way." *Massachusetts v. E.P.A.*, 549 U.S. 497, 517, (2007).

30. Yearwood has used his property in various non-commercial ways to benefit the community.

31. Yearwood built an outdoor shooting range on the property for the local high school's 4-H members to practice gun-sports. He provides the facilities free of charge. In years past, he has allowed church youth groups and the local 4-H group to use the property for camping. Young individuals looking to join the armed forces have also used the property to practice their "field craft"-i.e. their camping and wilderness survival skills. Yearwood does not charge for these services.

32. Yearwood would like to allow more camping on the property. However, the portions of the property best suited for camping also contain BCH habitat.

33. Campfires, gunsports, and other recreational activities carried out in close proximity to BCH habitat are likely to cause a take.

34. Clearing brush to reduce the risk of snakes and fires around BCH habitat is also likely to cause a take.

35. The heavy penalties for BCH takes, combined with the high risk of a BCH take, has made it unfeasible for Mr. Yearwood to use that area of his property for camping or other recreational activities.

36. Acquiring a take permit would require Yearwood to submit to a costly and time consuming administrative process that he believes is unconstitutional. Additionally, the cost of a take permit is prohibitive.

37. Under the existing conservation plan, development within 345 feet of a known BCH cave requires a payment of $10,000 an acre. This buffer begins at the outermost edge of the cave as it exists underground- not the cave's entrance. Development within 35 feet of a BCH cave requires a payment of $400,000.

**2. Williamson County, TX**

38. Intervenor Williamson County, Texas has standing to bring suit because the BCH listing-and the resulting prohibition on BCH takes-inhibits its ability to fully use, maintain, and enjoy the portions of its property that lay in and around BCH habitat. Moreover, the BCH listing-and the resulting prohibition on BCH takes-greatly increases the time and cost associated with providing County health, safety, and welfare, services to its citizens whose property lay in and around BCH habitat. Finally, the BCH listing, the resulting prohibition on BCH takes, and the resulting recovery and conservation mandates from the Service require the County to spend substantial amounts of taxpayer funds to accommodate the BCH. These restrictions and mandates affect the County in a "concrete and personal way." *Massachusetts v. E.P.A.,* 549 U.S. 497, 517, (2007).

39. There are hundreds of caves containing BCH in Williamson County.

40. Under the Service's mandated BCH Conservation Plan (Plan), the County is divided into three regions: North, Central, and South. To comply with the Plan, the County must

purchase and maintain at least three perpetual BCH preserves in each region, for a total of nine preserves.

41. The County owns and manages two parks containing BCH habitat. The County also owns and manages eleven BCH habitat preserves totaling over 800 acres. The County is in the process of acquiring an additional 70 acres of BCH preserve, bringing the total County-owned preserve land owned by the County to almost 900 acres.

42. While the County currently manages eleven preserves, (more than the nine required) it has, to date, been unable to acquire sufficient property in the southern region to meet the Service's mandates.

43. The County estimates that it will have to acquire an additional 400 acres of BCH preserve to comply with the Plan.

44. Maintenance of these preserves is expensive and time consuming diverting funds that would otherwise be expended to provide for the health, safety, and welfare services provided by the County to its residents.

45. The County must install and maintain metal grate coverings and take other actions to protect cave entrances. County personnel are required to monitor the caves for fire ants and other hazards to the BCH. If fire ants are present in or around a BCH cave, County personnel must eliminate the ants. The County currently uses steam to eliminate the ants, because pesticides could prove deadly to BCH. The County's BCH fire ant service costs approximately $19,000 annually.

46. Additionally, the Plan requires the County to maintain a perpetual $20,000,000 conservation fund to cover any BCH conservation efforts. The conservation fund is funded by tax dollars that would otherwise flow into the County's general fund to be used by the County to provide services to residents.

47. In the past, the prohibition on BCH takes has affected the placement and cost of county buildings, facilities, parks, sports fields, water lines, and other County services.

48. Upon information and belief and as alleged by Plaintiffs, BCH are widespread throughout Williamson County. Accordingly, the placement and cost of county buildings, facilities, parks, sports fields, water lines, and other County services will be impacted by the prohibition on BCH takes in the future.

## V. CLAIMS FOR RELIEF

49. All preceding paragraphs are realleged and incorporated herein by reference.

50. Intervenors seek to remove the BCH from ESA listing, request the Court declare the BCH listing unconstitutional, and order the Service to rescind listing of the BCH.

51. If an injunction does not issue enjoining the Service from enforcing the take prohibition for the BCH, Intervenors will be irreparably harmed by being subject to unnecessary and costly restrictions on their ability to protect their property and other interests.

52. Intervenors have no plain, speedy, and adequate remedy at law.

53. Intervenors' action is ripe and timely.

54. If not enjoined by this Court, the Service will continue to enforce and act in reliance upon the take prohibition for the BCH in derogation of Intervenors' rights.

55. An actual and substantial controversy exists between Intervenors and the Service over the Service's duty to comply with the United States Constitution, the Endangered Species Act, and the Administrative Procedure Act in regulating the BCH and issuing regulations limiting BCH takes.

56. This case is justiciable because the Service's failure to comply with these laws is the direct result of final agency action that has caused and will continue to cause immediate and concrete injury to Intervenors, by subjecting them to illegal and costly restrictions on their rights

to use and enjoy their property and other protected interests. Intervenors, have a vital interest in knowing whether the regulation of the BCH and prohibition on BCH takes is constitutionally and statutorily valid.

57. Declaratory relief is therefore appropriate to resolve this controversy.

A. **COUNT ONE - PETITION FOR REVIEW OF FINAL AGENCY ACTION PROHIBITING THE TAKE OF THE BONE CAVE HARVESTMAN IN VIOLATION OF THE APA (5 U.S.C. § 706)**

58. The preceding paragraphs are realleged and incorporated herein by reference.

59. The Service's decision not to delist the BCH violates the Administrative Procedures Act (APA), 5 U.S.C. *§* 706, because the Service does not have the constitutional authority to list BCH or prohibit the take thereof.

60. Under the APA, an agency action, finding, or conclusion is invalid if it is (a) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, (b) contrary to any constitutional right, power, privilege or immunity, (c) inconsistent with any statute, (d) adopted without compliance with required procedures, (e) unsupported by substantial evidence, or (f) unwarranted by the facts (if reviewed de nova). 5 U.S.C. §706.

61. An agency action that would extend an act of Congress beyond Congress' enumerated powers is contrary to a constitutional right, power, privilege, or immunity and not in accordance with law.

62. The United States Constitution grants Congress the power to regulate commerce among the several states. U.S. Const., Art. 1 *§* 8.

63. Pursuant to the Commerce Clause, Congress may regulate economic activities that substantially affect interstate commerce. *United States v. Morrison,* 529 U.S. 598, 608-09 (2000). Congress may also regulate non-economic activities if such regulation is necessary to

vindicate an otherwise valid comprehensive economic regulatory scheme. *Gonzales v. Raich,* 545 U.S. 1 (2005); *US. v. Whaley,* 577 F.3d. 254, 260 (5th Cir. 2009).

64. Pursuant to the ESA, the Service has classified the BCH as an endangered species. Also under the Act's aegis, the Service has generally prohibited the take of BCH wherever found, including non-federal property.

65. On June 1, 2015, the Service issued an initial Negative 90-Day Finding, denying Plaintiffs' petition to delist the BCH. This denial constitutes final agency action whereby the Service has chosen to regulate BCH and BCH takes.

66. On May 4, 2017, the Service reissued the same Negative 90-Day Finding, following a December 22, 2016 court order granting Defendants' Motion for Voluntary Remand and staying the case pending further order of the court. This denial reaffirms the Service's regulation of BCH and BCH takes.

67. The BCH exists only within the state of Texas.

68. The BCH has no commercial value. The Service has not made any findings that the BCH or BCH takes substantially affect interstate commerce. Rather, the Service has consistently concluded that the BCH is not at risk due to commercial overutilization. The BCH and BCH takes, aggregated to include the entire species, do not substantially affect interstate commerce. BCH takes are categorically non-economic activity.

69. The BCH is an isolated species that exist solely in caves in Williamson and Travis Counties, Texas. It has minimal interaction with other species in the surrounding eco-system. The BCH is not part of an interconnected web of species that affect interstate commerce. BCH takes do not have a significant effect on other species or the larger ecosystem.

70. The primary purpose of the Endangered Species act is to prevent species loss. The inability to regulate the BCH or BCH takes would not frustrate the Service's ability to regulate takes of commercially valuable species or species within the channels of commerce. Thus, the regulation of BCH and of BCH takes is unnecessary to vindicate any comprehensive economic regulatory scheme.

71. No enumerated power supports the regulation of BCH or BCH takes.

72. The regulation of the BCH and of BCH takes is neither necessary nor proper to the exercise of any power of the federal government.

73. Therefore, the regulation of BCH and of BCH takes is contrary to constitutional right, power, privilege, or immunity, 5 U.S.C. § 706(2)(B), as well as arbitrary, capricious, and contrary to law, 5 U.S.C. § 706(2)(A).

**B. COUNT TWO - DECLARATORY AND INJUNCTIVE RELIEF FOR THE ADOPTION AND ENFORCEMENT OF THE PROHIBITION OF TAKE FOR THE BONE CAVE HARVESTMAN IN EXCESS OF CONGRESS' ENUMERATED POWERS (U.S. CONST. AMEND. X)**

74. All preceding paragraphs are realleged and incorporated by reference.

75. The listing of the BCH, and the resulting prohibition on BCH takes, exceeds Congress's Constitutional authority under the Commerce Clause because the BCH exists in only one state, is not bought, utilized or traded in interstate commerce, and the regulation of BCH takes is not necessary to regulate any interstate market.

76. The Tenth Amendment provides that: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people." The Amendment protects states and persons from actions taken by the federal government in excess of its enumerated powers. *Bond v. United States,* 131 S. Ct. 2355 (201 1).

77. The United States Constitution grants Congress the power to regulate commerce among the several states.

78. Pursuant to the Commerce Clause, Congress may regulate economic activities that substantially affect interstate commerce. *United States v. Morrison,* 529 U.S. 598, 608-09 (2000). Congress may also regulate non-economic activities if such regulation is necessary to vindicate an otherwise valid comprehensive economic regulatory scheme. *Gonzales v. Raich,* 545 U.S. 1 (2005); *US. v. Whaley,* 577 F.3d. 254, 260 (5th Cir. 2009).

79. Pursuant to the ESA, the Service has classified the BCH as an endangered species. Also under the Act's aegis, the Service has generally prohibited the take of BCH.

80. On June 1, 2015 the Service issued an initial Negative 90-Day Finding denying Plaintiffs petition to delist the BCH. This denial constitutes final agency action whereby the Service has chosen to regulate the BCH and BCH takes on non-federal land.

81. On May 4, 2017, the Service reissued the same Negative 90-Day Finding, following a December 22, 2016 court order granting Defendants' Motion for Voluntary Remand and staying the case pending further order of the court. This denial reaffirms the Service's regulation of BCH and BCH takes.

82. BCH takes, aggregated to include the entire species, do not substantially affect interstate commerce and are categorically non-economic activity.

83. The Endangered Species Act is not a comprehensive economic regulatory scheme. The inability to regulate BCH takes would not frustrate the Service's ability to regulate takes of commercially valuable species or species within the channels of commerce. Thus, the regulation of BCH takes is unnecessary to vindicate any comprehensive economic regulatory scheme.

84. No enumerated power supports the regulation of the BCH or BCH takes.

85. The ESA regulation of the BCH and prohibition of BCH takes is neither necessary nor proper to the exercise of any power of the federal government.

86. Therefore, the ESA regulation of the BCH and prohibition of BCH takes violates the Tenth Amendment and is unconstitutional.

## VI. PRAYER AND CONCLUSION

THEREFORE, Intervenor Plaintiffs pray for judgment against the Service as follows:

1. that the Court declare the ESA listing of the BCH unconstitutional and order the Service to rescind listing of the BCH ;

2. for a declaration that the continued listing of the BCH and the resulting prohibition of BCH takes is invalid under the Administrative Procedure Act, 5 U.S.C. § 706, because it is inconsistent with constitutional right, power, privilege, or immunity and not in accordance with law;

3. for a declaration that the continued listing of the BCH and the resulting prohibition of BCH takes is an invalid exercise of delegated legislative power under the United States Constitution, and that the Service is without authority to prohibit BCH takes on non-federal land;

4. for a permanent injunction preventing the Service from enforcing the prohibition of BCH takes;

5. for an award of Intervenors' costs of litigation, including, but not limited to, reasonable attorneys' fees and expert witness fees, and fees and costs pursuant to 28 U.S.C. § 2412, or other applicable authority; and

6. for such other relief as the Court may deem just and proper.

Dated: July 18, 2017

Respectfully Submitted,

CHAD ENNIS
Texas Bar No. 240045834
chad.ennis@bracewell.com
KEVIN D. COLLINS
Texas Bar No. 24050438
kevin.collins@bracewell.com
BRACEWELL LLP
111 Congress Avenue, Suite 2300
Austin, TX 78701
Phone: 512-472-7800
Fax: 800-404-3970

CHANCE D. WELDON
cweldon@texaspolicy.com
ROBERT E. HENNEKE
rhenneke@texaspolicy.com
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, TX 78701
Phone: 512-472-2700
Fax: 512-472-2728

*Attorneys for Intervenor-Plaintiffs John Yearwood and Williamson County, Texas*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 18, 2017, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Chad Ennis*

Chad Ennis
