**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| AMERICAN STEWARDS OF LIBERTY, *et al*., | ) ) |
| Plaintiffs, | ) |
| | ) |
| JOHN YEARWOOD and WILLIAMSON COUNTY, TEXAS, | ) Civil No. 1:15-cv-01174-LY ) |
| Plaintiff-Intervenors, | ) |
| | ) |
| v. | ) |
| | ) |
| DEPARTMENT OF THE INTERIOR, *et al*., | ) |
| Defendants, | ) |
| | ) |
| CENTER FOR BIOLOGICAL DIVERSITY, DEFENDERS OF WILDLIFE, and TRAVIS AUDUBON, | ) ) ) |
| Defendant-Intervenors. | ) |
| _____ | ) |

**DEFENDANT-INTERVENORS' CROSS-MOTION FOR SUMMARY**
**JUDGMENT AND OPPOSITION TO PLAINTIFF-INTERVENORS' MOTION**
**FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant-Intervenors Center for Biological Diversity, Defenders of Wildlife, and Travis Audubon respectfully move this Court to grant summary judgment to Defendant-Intervenors on all claims. In support, Defendant-Intervenors submit the following Memorandum in Support of their Cross-Motion for Summary Judgment and Response to Plaintiff-Intervenors' Motion for Summary Judgment.

## TABLE OF CONTENTS

**Page**

SUMMARY OF THE ARGUMENT ................................................................1

STATEMENT OF FACTS ...........................................................................3

    I.     Factual Background ......................................................................3

          A.  The Bone Cave Harvestman ......................................................3

          B.  Procedural History ...................................................................3

    II.    Legal Background ........................................................................5

          A.  The Commerce Clause ..............................................................5

          B.  The Necessary and Proper Clause ...............................................6

          C.  The Endangered Species Act ......................................................6

STANDARD OF REVIEW ..........................................................................7

ARGUMENT ..........................................................................................8

    I.     Binding Precedent Bars Plaintiff-Intervenors' Attempted Relitigation of Settled Constitutional Claims .........................................................8

          A.  The Fifth Circuit Previously Addressed Plaintiff-Intervenors' Commerce Clause Challenge in *GDF Realty* ...............................8

          B.  *Raich* and *Sebelius* Did Not Overturn *GDF Realty Sub Silentio* ...............11

          C.  The Fifth Circuit Recently Reaffirmed *GDF Realty* in *Markle* ................15

          D.  This Court May Not Depart from Circuit Precedent .................16

    II.    Federal Listing and Protection of Endangered Species Under the ESA Does Not Violate the Tenth Amendment.........................................17

CONCLUSION.......................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alabama-Tombigbee Rivers Coal. v. Kempthorne*,
  477 F.3d 1250 (11th Cir. 2007), *cert. denied*, 552 U.S. 1097 (2008)...............2, 16, 18

*F.D.I.C. v. Abraham*,
  137 F.3d 264 (5th Cir. 1998) ........................................................................ 16-17, 19

*GDF Realty Inv., Ltd. v. Norton*,
  362 F.3d 286 (2004), *cert. denied*, 545 U.S. 1114 (2005) .................................. *passim*

*GDF Realty Investments, Ltd. v. Norton*,
  169 F. Supp. 2d 648 (2001) ....................................................................................4

*GDF Realty Investments, Ltd. v. Norton*,
  326 F.2d 622 (2003)................................................................................................4

*Gibbs v. Babbitt*,
  214 F.3d 483 (4th Cir. 2000), *cert. denied sub nom.*
  *Gibbs v. Norton*, 531 U.S. 1145 (2001) ...............................................................2, 10

*Gonzales v. Raich*,
  545 U.S. 1 (2005)................................................................................... *passim*

*Heart of Atlanta Motel, Inc. v. United States*,
  379 U.S. 241 (1964)................................................................................................12

*Hodel v. Indiana*,
  452 U.S. 314 (1981)................................................................................................14

*J & J Sports Prod. v. Chapman*,
  No. A-11-CA-532-LY, 2011 U.S. Dist. LEXIS 120242
  (W.D. Tex. Oct. 18, 2011) ....................................................................................17

*Katzenbach v. McClung*,
  379 U.S. 294 (1964)................................................................................................12

*Markle Interests, L.L.C. v. U.S. Fish & Wildlife Serv.*,
  827 F.3d 452 (5th Cir. 2016) ........................................................................... *passim*

*McKay v. Novartis Pharm. Corp.*,
  751 F.3d 694 (5th Cir. 2014) ................................................................................17

*Nat'l Ass'n of Home Builders v. Babbitt*,
  130 F.3d 1041 (D.C. Cir. 1997), *cert. denied*, 524 U.S. 937 (1998) ......................2, 10

*National Federation of Independent Business v. Sebelius,*
    567 U.S. 519 (2012) .................................................................... *passim*

*People for the Ethical Treatment of Property Owners v. U.S. Fish &*
    *Wildlife Serv.*, 852 F.3d 990 (10th Cir. 2017) ..................................... *passim*

*Rancho Viejo v. Norton,*
    323 F.3d 1062 (D.C. Cir. 2003), *cert. denied*, 540 U.S. 1218 (2004) ......... 2, 11, 17-18

*San Luis & Delta-Mendota Water Auth. v. Salazar,*
    638 F.3d 1163 (9th Cir. 2011), *cert. denied sub nom. Orchards v.*
    *Salazar*, 565 U.S. 1009 (2011) .............................................................. 2, 17

*Taylor v. United States,*
    136 S. Ct. 2074 (2016) .......................................................................... 5

*Tenn. Valley Auth. v. Hill,*
    437 U.S. 153 (1978) .............................................................................. 6

*United States v. Hoster,*
    70 F.3d 1267 (5th Cir. 1995) ................................................................ 17

*United States v. Lopez,*
    514 U.S. 549 (1995) ........................................................................ *passim*

*United States v. Morrison,*
    529 U.S. 598 (2000) ....................................................................... 9, 10, 12

*Vasquez v. Hillery,*
    474 U.S. 254 (1986) .............................................................................. 6

*Wickard v. Filburn,*
    317 U.S. 111 (1942) ...................................................................... 11, 12, 15

## Constitution and Statutes

U.S. Const. Art. I, § 8, cl. 3 ....................................................................... *passim*

U.S. Const. Art. I, § 8, cl. 18 ..................................................................... *passim*

U.S. Const. Amend. X .......................................................................... 2, 3, 17

*Administrative Procedure Act*

5 U.S.C. § 706(2)(A)-(B) ............................................................................. 7

*Endangered Species Act*

16 U.S.C. § 1531(a)(1),(3) ........................................................................... 6

16 U.S.C. § 1531(b) ........................................................................................................6

16 U.S.C. § 1532(2), (5), (6), (19), (20) ...........................................................................7

16 U.S.C. § 1533(a)(1)(B) ...............................................................................................7

16 U.S.C. § 1533(e) .........................................................................................................7

16 U.S.C. § 1535(f) ..........................................................................................................7

16 U.S.C. § 1536 ..............................................................................................................7

16 U.S.C. § 1538(a)(1)(B) ...............................................................................................7

16 U.S.C. § 1538(a)(1)(E), (F) .........................................................................................7

*Judiciary and Judicial Procedure*

28 U.S.C. § 2401(a) .........................................................................................................1

## **Other Authorities**

58 Fed. Reg. 43,818 (Aug. 18, 1993) ...........................................................................1, 3

59 Fed. Reg. 11,755 (Mar. 14, 1994) ...............................................................................4

80 Fed. Reg. 20,241 (Apr. 15, 2015) ................................................................................4

80 Fed. Reg. 30,990 (June 1, 2015) ..................................................................................4

82 Fed. Reg. 20,861 (May 4, 2017) ..................................................................................5

Michael C. Blumm & George A. Kimbrell,
    *Gonzales v. Raich*: The "Comprehensive Scheme" Principle, and the
    Constitutionality of the Endangered Species Act, 35 *Envtl. L.* 491
    (2005) ...........................................................................................................................12

Richard J. Lazarus,
    *The Making of Environmental Law* (2005) ...............................................................16

## SUMMARY OF THE ARGUMENT[1]

Plaintiff-Intervenors insist that Congress lacks the constitutional authority to protect the Bone Cave harvestman, a rare karst invertebrate that lives only in caves in a small part of Texas. They argue that Endangered Species Act ("ESA") protections for the harvestman violate the Constitution's Commerce Clause because, like many species protected by the ESA, the harvestman can only be found in one state and is not currently traded in commerce. Binding precedent of the Fifth Circuit forecloses their claim. The Fifth Circuit already decided this issue in a case involving the very same species. *GDF Realty Inv., Ltd. v. Norton*, 362 F.3d 286 (2004) (upholding the constitutionality of the ESA as applied to the harvestman and five other species of cave invertebrates), *cert. denied*, 545 U.S. 1114 (2005). Moreover, the court recently reaffirmed that decision in *Markle Interests, L.L.C. v. U.S. Fish & Wildlife Serv.*, 827 F.3d 452 (5th Cir. 2016) (upholding the constitutionality of critical habitat rules for the dusky gopher frog), *petitions for cert. filed*, (July 13 and July 14, 2017) (Nos. 17-71 and 17-74).

Plaintiff-Intervenors concede that *GDF Realty* already addressed this question, so they argue instead that the Supreme Court overruled *GDF Realty* by implication in *Gonzales v. Raich*, 545 U.S. 1 (2005) (upholding the regulation of marijuana as part of a comprehensive scheme to address illegal drugs) and *National Federation of Independent Business v. Sebelius*, 567 U.S. 519 (2012) (upholding the Patient Protection and Affordable Care Act as a valid exercise of

---

[1] The Federal Defendants' argue that this Court lacks jurisdiction to hear a Commerce Clause challenge to the listing of the Bone Cave harvestman because the claim is time barred. Dkt. 145 at 7-9. The harvestman has been listed since 1988 or, alternatively 1993, after taxonomic revision. 58 Fed. Reg. 43,818. In either case, the opportunity to litigate any claims against the listing expired six years from the date of the regulation's publication. 28 U.S.C. § 2401(a). Because Plaintiff-Intervenors appear to be challenging the listing on its face, we agree with Defendants that this claim has been barred since at latest 1999 and should be dismissed accordingly.

1

Congress' taxing power). There are two problems with this argument: First, Plaintiff-Intervenors grossly misrepresent these cases, which support the holding of *GDF Realty*. Second, they ignore that even after the Supreme Court decided these cases, the Fifth Circuit reaffirmed *GDF Realty* in *Markle*, 827 F.3d at 475-79. Notably, Plaintiff-Intervenors do not cite *Markle* in their briefs.

The Fifth Circuit is not alone in finding that the Commerce Clause allows Congress to regulate the take of imperiled species wherever they reside. No fewer than six federal courts of appeals have now rejected similar claims.[2] As the Tenth Circuit most recently held, "the substantial relationship between the ESA and interstate commerce is patent." *People for the Ethical Treatment of Prop. Owners v. United States Fish & Wildlife Serv.* ("*PETPO*"), 852 F.3d 990, 1006 (10th Cir. 2017), *petition for cert. filed*, (Sept. 28, 2017) (No. 17-645). After nearly a half-century of federal ESA protections for creatures great and small, the law is settled: Congress has ample authority to protect imperiled species wherever they reside.

Because the ESA is a valid exercise of federal power under the Commerce Clause, there is no need to consider the Necessary and Proper Clause and the Tenth Amendment. In any event, federal protection of single-state species is essential to Congress' comprehensive plan to preserve the immense value of America's biodiversity. This Court may not reach a contrary conclusion.

---

[2] In addition to the Fifth Circuit, the Fourth, Ninth, Tenth, Eleventh, and District of Columbia circuits have already addressed this issue: *People for the Ethical Treatment of Property Owners v. U.S. Fish & Wildlife Serv.* ("*PETPO*"), 852 F.3d 990 (10th Cir. 2017) (upholding ESA protection for the Utah prairie dog), *petition for cert. filed*, (Sept. 26, 2017) (No. 17-645); *San Luis & Delta-Mendota Water Auth. v. Salazar*, 638 F.3d 1163 (9th Cir. 2011) (Delta smelt), *cert. denied sub nom. Orchards v. Salazar*, 565 U.S. 1009 (2011); *Alabama-Tombigbee Rivers Coal. v. Kempthorne*, 477 F.3d 1250 (11th Cir. 2007) (Alabama sturgeon), *cert. denied*, 552 U.S. 1097 (2008); *Rancho Viejo v. Norton*, 323 F.3d 1062 (D.C. Cir. 2003) (arroyo toad), *cert. denied*, 540 U.S. 1218 (2004); *Gibbs v. Babbitt*, 214 F.3d 483 (4th Cir. 2000) (red wolves), *cert. denied sub nom. Gibbs v. Norton*, 531 U.S. 1145 (2001); *Nat'l Ass'n of Home Builders v. Babbitt*, 130 F.3d 1041 (D.C. Cir. 1997) (Delhi Sands flower-loving fly), *cert. denied*, 524 U.S. 937 (1998).

2

STATEMENT OF FACTS

I.     **Factual Background**

A.  **The Bone Cave Harvestman**

The Bone Cave harvestman (*Texella reyesi*) is a tiny, eyeless arachnid that is specifically adapted to survive in the unique karst habitat found in Central Texas. The rare species superficially resembles spiders but belongs instead to a distinct order of arachnids known as Opiliones. Harvestmen are found only in subterranean environments, and are specifically known to occupy 168 caves in a range of less than 100 square miles in Travis and Williamson counties in Texas. R005238. These unusual creatures will spend their entire lives in these small underground limestone caves and sinkholes. M003411. Harvestmen are usually found under large rocks in the coolest parts of the caves but they are highly dependent on the overlying surface habitat conditions. *Id*.; M003417. Nutrients for the species wash or fall in from the surface in the form of leaf litter, animal droppings, or animal carcasses. The harvestman is also at risk of cave collapse or filling, alteration of karst drainage patterns, alteration of the surface plant and animal communities, contamination in the ecosystem, spills of hazardous materials, and human visitation. R005238. Consequently, development and construction activities that disturb the species' habitat are two of the primary reasons that the U.S. Fish and Wildlife Service ("FWS") listed the species as endangered.

B.  **Procedural History**

As the Federal Defendants detail in their brief, the harvestman was first listed in 1988 as the Bee Cave harvestman, but when subsequent studies revealed that the Bone Cave harvestman was a distinct species, FWS listed it under its current name in 1993. 58 Fed. Reg. 43,818 (Aug. 18, 1993). Almost immediately, the listing drew political opposition. That same year,

representatives of the Williamson County Commissioners Court submitted a petition to the FWS to delist seven species of endangered karst invertebrates; the Bone Cave harvestman was among them. FWS denied the petition. 59 Fed. Reg. 11,755 (Mar. 14, 1994). Several unsuccessful lawsuits followed.

In 2001, the Western District of Texas held that ESA protections for the cave species did not exceed Congress' authority under the Commerce Clause and granted summary judgment for the government. *GDF Realty Invs., Ltd. v. Norton*, 169 F. Supp. 2d 648 (2001) (J. Sparks). The Fifth Circuit affirmed in 2003, holding that the ESA was an economic regulatory scheme and that ESA protections for intrastate species, in the aggregate, had a substantial effect on interstate commerce. *GDF Realty Invs., Ltd. v. Norton*, 326 F.2d 622 (2003). Petitions for rehearing, and for certiorari were denied. *GDF Realty Invs., Ltd. v. Norton*, 362 F.3d 286 (2004), *cert. denied*, 545 U.S. 1114 (2005).

The present case arises out of a new crusade to end federal protections for the harvestman. On June 2, 2014, FWS received a petition to delist the species. As required by the ESA, FWS reviewed the petition and issued a 90-day finding denying the petition because it did not present substantial scientific or commercial information indicating that a delisting of the species was warranted due to recovery, extinction or an error in the original scientific data. 80 Fed. Reg. 30,990 (June 1, 2015).[3]

Plaintiffs American Stewards of Liberty, et al., challenged the negative petition finding in this Court. Shortly thereafter, John Yearwood and Williamson County intervened in the case to argue separately that the listing and regulation of take of the Bone Cave harvestman violates the

---

[3] While the petition was pending, FWS also completed a statutorily required 5-year status review for the Bone Cave harvestman and recommended no change in the species' listing status. 80 Fed. Reg. 20,241 (Apr. 15, 2015).

4

Constitution's Commerce Clause and Necessary & Proper Clause—repackaging the claim that the Western District of Texas and the Fifth Circuit both previously rejected in *GDF Realty*, 326 F.3d 622. In response, FWS requested and was granted a voluntary remand to consider some materials inadvertently omitted from its initial review of the petition. Dkt. No. 55. FWS issued a new negative 90-day finding on March 31, 2017. 82 Fed. Reg. 20,861 (May 4, 2017) ("90-Day Finding"); *see also* Dkt. No. 100. Plaintiffs amended their complaint and now challenge the new 90-day finding. Plaintiff-Intervenors continue to press their constitutional claims.

## II.   Legal Background

### A.  The Commerce Clause

The Commerce Clause gives Congress the power "[t]o regulate commerce with foreign nations, and among the several states, and with the Indian tribes." U.S. Const. Art. I, § 8, cl. 3. It empowers Congress to regulate three broad categories of activities: the channels of interstate commerce; the instruments of interstate commerce, and persons or things in interstate commerce; and activities that substantially affect interstate commerce. *United States v. Lopez*, 514 U.S. 549, 558-59 (1995). Under the third *Lopez* category, Congress has the "power to regulate purely local activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce." *Raich*, 545 U.S. at 17; *accord Taylor v. United States*, 136 S. Ct. 2074, 2080 (2016). "[A]ctivities ... that 'substantially affect' commerce ... may be regulated so long as they substantially affect interstate commerce *in the aggregate*, even if their individual impact on interstate commerce is minimal." *Taylor*, 136 S. Ct. at 2079 (emphasis added)).

In applying the aggregation principle, courts distinguish between regulations that fall "outside Congress' commerce power in its entirety," *Raich*, 545 U.S. at 23, and regulations that constitute an "individual *application*[ ] of a concededly valid statutory scheme." *Sebelius*, 567

5

U.S. at 561 (quoting *Raich*, 545 U.S. at 23). Consequently, "where *a general regulatory statute bears a substantial relation to commerce*, the *de minimis* character of individual instances arising under that statute is of no consequence." *Lopez*, 514 U.S. at 558 (quoting *Maryland v. Wirtz*, 392 U.S. 183, 196 n.27 (1968)).

### B.  The Necessary and Proper Clause

The Constitution authorizes Congress to "make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers …." U.S. Const. Art. I, § 8, cl. 18. This "Necessary and Proper Clause" makes the "reach of the Federal Government's enumerated powers [] broader still." *Sebelius*, 567 U.S. at 537. The Supreme Court has "long read this provision to give Congress great latitude in exercising its powers." *Id.*

### C.  The Endangered Species Act

Congress approved the ESA in 1973 out of a concern that "various species of fish, wildlife, and plants in the United States have been rendered extinct as a consequence of economic growth and development untempered by adequate concern and conservation." 16 U.S.C. § 1531(a)(1). Congress recognized that a federal program of protections for endangered species, wherever they occur, is essential if such species are to recover from the brink of extinction to provide "esthetic, ecological, educational, historical, recreational, and scientific value to the Nation and its people." *Id.* § 1531(a)(3).

To that end, the ESA replaced a relatively ineffective amalgamation of conservation statutes in favor of "the most *comprehensive* legislation for the preservation of endangered species ever enacted by any nation." *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 180 (1978) (emphasis added); *see also id.* at 174-78 (detailing the pre-ESA attempts to protect biodiversity). The comprehensive nature of the statute is further revealed in its purpose to "provide a means

6

whereby the ecosystems upon which endangered species and threatened species depend may be conserved ….” 16 U.S.C. § 1531(b). The statute’s purposes are effectuated by listing a species as either “threatened,” *id*. § 1532(20), or “endangered,” *id*. § 1532(6), and by prohibiting the “take” of such species without prior authorization. *Id*. § 1538(a)(1)(B); § 1532(19). Federal agencies must also ensure that their activities will not cause “jeopardy” to a listed species or adversely modify its designated “critical habitat.” *Id*. § 1536; § 1532(5).

The ESA contains several provisions that directly speak to the regulation of economic activity and interstate commerce. These include the definition of “commercial activity” to include “all activities of industry and trade” and “the buying and selling of commodities and activities conducted for the purpose of facilitating such buying and selling,” *id.* § 1532(2); the requirement that overutilization for commercial purposes be considered in determining whether a species is endangered, *id.* § 1533(a)(1)(B); authorizing the Secretaries of the Interior and Commerce to regulate trade in non-listed species that closely resemble listed species, *id.* § 1533(e); declaring the supremacy of the ESA over state law when the two conflict regarding interstate commerce in endangered and threatened species, *id.* § 1535(f); and prohibiting the transport or sale of endangered species in interstate commerce, *id.* § 1538(a)(1)(E), (F). To quote again the words of the Tenth Circuit, “the substantial relationship between the ESA and interstate commerce is patent.” *PETPO*, 852 F.3d at 1006.

## STANDARD OF REVIEW

This case is governed by the Administrative Procedure Act (“APA”), which provides that a reviewing court shall “hold unlawful and set aside agency action, findings, and conclusions found to be … not in accordance with law [or] contrary to constitutional right, power, privilege, or immunity.” 5 U.S.C. § 706(2)(A)-(B). When reviewing a challenge to an act of Congress

7

passed under its Commerce Clause authority, courts apply a rational basis test and may
"invalidate a congressional enactment only upon a *plain showing* that Congress has exceeded its
constitutional bounds." *GDF Realty*, 326 F.3d at 627 (quoting *United States v. Morrison*, 529
U.S. 598, 607 (2000)). *See Sebelius*, 567 U.S. at 538 (Roberts, J.) (challengers must "clearly
demonstrate" a statute's unconstitutionality (citation omitted)). The Supreme Court has stressed
that courts "need not determine whether … activities, taken in the aggregate, substantially affect
interstate commerce in fact, but only whether a 'rational basis' exists for so concluding." *Raich*,
545 U.S. at 22 (quoting *Lopez*, 514 U.S. at 557).

## ARGUMENT

### I. Binding Precedent Bars Plaintiff-Intervenors' Attempted Relitigation of Settled Constitutional Claims

#### A. The Fifth Circuit Previously Addressed Plaintiff-Intervenors' Commerce Clause Challenge in *GDF Realty*

Plaintiff-Intervenors want this Court to declare the federal Endangered Species Act
unconstitutional as applied to the Bone Cave harvestman. They insist that the Constitution's
Commerce Clause must be read narrowly to preclude federal protection of biodiversity that does
not cross state lines and is not traded in commerce. But the Fifth Circuit squarely rejected this
proposition in *GDF Realty*. The Fifth Circuit considered the constitutionality of ESA protections
for the Bone Cave harvestman (among other cave species) and found, consonant with every
circuit court to consider the question before or since, that the federal government has ample
authority to protect the nation's biodiversity heritage wherever it may reside and no matter its
specific impact on commerce. *GDF Realty*, 326 F.3d at 638-40.

The panel first noted that a rational basis test governed its review of the constitutional
question presented and that it could "invalidate a congressional enactment only upon a *plain*

*showing* that Congress has exceeded its constitutional bounds." *Id.* at 627 (quoting *Morrison*, 529 U.S. at 607). The panel also noted that, of the three categories of activities which may be regulated under the Commerce Clause's authority, the only one at issue was "those activities that substantially affect interstate commerce." *Lopez*, 514 U.S. at 558-59.

Turning to the merits, the Fifth Circuit held that regulation of non-commercial, intrastate activities may be a valid exercise of Commerce Clause authority if it substantially affects interstate commerce when aggregated with similar activities. *GDF Realty*, 326 F.3d at 636. Following *Lopez* and *Morrison*, the panel held that aggregation is appropriate when the non-commercial intrastate activity in question is part of a "larger regulation … directed at an activity that is economic in nature … [and] the regulated intrastate activity [is] an 'essential' part of the economic regulatory scheme." *Id.* at 639.

On the first prong, the Fifth Circuit easily found the ESA's protection of endangered and threated species to be economic in nature. *Id.* For the second prong, it concluded that the regulation of individual takes was essential to the ESA's framework because in the absence of an ability to protect all species, "piece-meal" extinctions could result. *Id.* at 640. That would undercut Congress' intent "to protect the ecosystems upon which we and other species depend." *Id.* at 639-40. Having found aggregation appropriate, the panel had no trouble concluding that the "take" of harvestmen could be aggregated with those of all other species and that the potential loss of such species would substantially affect interstate commerce. *Id.* at 624, 640. Thus, the court reasoned, "application of ESA's take provision to the [harvestman] is a constitutional exercise of the Commerce Clause power." *Id.*; *see also id.* at 644 (J. Dennis, concurring) (relying on the rationality of Congress' determination that prohibiting take of such

species is necessary in light of the uncertainty and complexity in the dependence of commercial species on noncommercial species).[4]

The Fifth Circuit's decision was consistent with prior circuit rulings upholding the ESA as a comprehensive regulatory scheme aimed at preserving the economic benefits of biodiversity and mitigating the negative effects of interstate economic competition. *See Gibbs v. Babbitt*, 214 F.3d 483, 488, 492-98 (4th Cir. 2000) (holding that take of forty-one purely intrastate red wolves is economic activity that substantially affects interstate commerce, and that regulation of that take is an essential part of the ESA's comprehensive regulatory scheme), *cert. denied sub nom. Gibbs v. Norton*, 531 U.S. 1145 (2001); *Nat'l Ass'n of Home Builders v. Babbitt*, 130 F.3d 1041, 1052 (1997) (finding that "Congress could rationally conclude that the intrastate activity regulated by section 9 of the ESA substantially affects interstate commerce [because it] prevents the destruction of biodiversity and thereby protects the current and future interstate commerce that relies upon it [and it] controls adverse effects of interstate competition."), *cert. denied*, 524 U.S. 937 (1998); *see also Rancho Viejo v. Norton*, 323 F.3d 1062 (D.C. Cir. 2003) (holding that the ESA substantially affects commerce because it regulates commercial activity impacting the arroyo toad), *cert. denied*, 540 U.S. 1218 (2004). Each case looked at purposes of the ESA, the nature of the regulated activity, and the potential impacts of species loss, to conclude that protection of intrastate species substantially affects commerce and is a valid exercise of Congress' Commerce Clause power.

---

[4] In this case, record evidence actually does support the economic value of the Bone Cave harvestman. According to the National Cave and Karst Research Institute, the species supports millions of dollars' worth of activity in research, conferences and publications, environmental/water supply protection, and public education/tourism. M003627-30. The Institute concludes that "there is considerable and diverse direct, indirect, and potential commercial value to the species." M003630.

10

### B.  *Raich* and *Sebelius* Did Not Overturn *GDF Realty Sub Silentio*

Given that *GDF Realty* is on all fours with this case, Plaintiff-Intervenors would like this Court to believe that *Gonzales v. Raich* and *NFIB v. Sebelius* worked a sea change in constitutional law, calling into question not only *GDF Realty* but a line of Commerce Clause precedent going back to *Wickard v. Filburn*, 317 U.S. 111 (1942) (upholding regulation of a farmer's cultivation of wheat for personal consumption). Their argument appears to be that two non-majority opinions from these cases somehow combine to establish a more rigorous test for reviewing congressional action under the Necessary and Proper Clause. Plaintiff-Intervenors are wrong.

In *Raich*, the Supreme Court considered and rejected the claim that the Commerce Clause does not permit Congress to apply a federal law prohibiting the manufacture and possession of marijuana to ban the personal cultivation and use of the drug for medicinal purposes, which was permitted under state law. 545 U.S. at 13-16. Writing for the majority, Justice Stevens held that "Congress had a rational basis for believing that failure to regulate the intrastate manufacture and possession of marijuana would leave a gaping hole" in the applicable federal scheme. *Id.* at 22. Concurring separately in the judgment, Justice Scalia agreed Congress "could reasonably conclude that its objective of prohibiting marijuana from the interstate market 'could be undercut' if those activities were excepted from its general scheme of regulation." *Id.* at 42 (Scalia, J. concurring).

Moreover, *Raich* cabined the application of *Lopez* and *Morrison* to cases in which the parties assert that "a particular statute or provision [falls] outside Congress' commerce power in its entirety," and took pains to distinguish cases where the parties allege, as here, that "individual

applications of a concededly valid statutory scheme" should be excised.[5] *Id.* at 22. The *Raich*
Court called this distinction "pivotal for the Court has often reiterated that [w]here the class of
activities is regulated and that class is within the reach of federal power, the courts have no
power to excise, as trivial, individual instances of the class." *Id.* (internal quotations omitted).
Justice Scalia further noted that *Lopez* and *Morrison* should not be understood to "declare
noneconomic intrastate activity to be categorically beyond the reach of the Federal
Government," because neither case "involved the power of Congress to exert control over
intrastate activities in connection with a more comprehensive scheme of regulation." *Id*. at 38-39.

Far from limiting Congress' power under the Commerce Clause, *Gonzales v. Raich*
resoundingly approved the comprehensive scheme principle articulated in *Lopez*, "firmly
securing its place in the Supreme Court's Commerce Clause jurisprudence." Michael C. Blumm
& George A. Kimbrell, Gonzales v. Raich: *The "Comprehensive Scheme" Principle, and the
Constitutionality of the Endangered Species Act*, 35 Envtl. L. 491, 493 (2005). The holding in
*Raich* is completely consonant with *GDF Realty* and other circuit cases upholding specific
applications of the ESA as part of a comprehensive approach to protecting the nation's interests
in biodiversity.

Plaintiff-Intervenors nonetheless insist that, post-*Sebelius*, the Necessary and Proper
Clause should be seen as a limitation on Congress' power. Plaintiff-Intervenors are wrong for
two reasons. First, given that Congress' authority to protect all species via the ESA is
demonstrably rooted in the Commerce Clause, there is no need to consider the Necessary and
Proper Clause separately. *PETPO*, 852 F.3d at 1008 (holding that since the ESA can be justified

---

[5] *Wickard v. Filburn*, 317 U.S. 111 (1942), *Heart of Atlanta Motel, Inc. v. United States*, 379
U.S. 241 (1964), and *Katzenbach v. McClung*, 379 U.S. 294 (1964), were all as-applied
challenges.

under "an enumerated power, the Commerce Clause, we need not consider its constitutionality under the Necessary and Proper Clause."). To be sure, both the *Raich* majority and Justice Scalia in a solo concurrence recognized this comprehensive scheme principle could flow as well from Congress' authority to "'make all Laws which shall be necessary and proper' to 'regulate Commerce … among the several States.'" 545 U.S. at 22 (quoting U.S. Const. art. I § 8). But the case was decided under the Commerce Clause, not the Necessary and Proper Clause. Only Justice Scalia's concurring opinion in *Raich*, joined by no other justice, squarely considered the case as implicating the Necessary and Proper Clause. *See id.* at 34 (Scalia, J., concurring) (opining that the substantial effects analysis of intrastate activities "derives from the Necessary and Proper Clause."). In any event, Justice Scalia's opinion clearly supports the notion that Congress could rationally regulate noneconomic intrastate activity as part of a broader scheme of regulation. Thus, Congress' decision to address the problem of interstate competition and inconsistent regulation in species protection through the adoption of a categorical rule "is entitled to a strong presumption of validity." *Id.* at 28; *see also GDF Realty*, 326 F.3d at 641-42 (J. Dennis, concurring) (noting that the Necessary and Proper Clause supports the constitutionality of the ESA). Having established the constitutionality of the Controlled Substances Act under the Commerce Clause, the *Raich* Court did not need to inquire further.

Second, the Necessary and Proper Clause expands, rather than contracts, federal authority under the Constitution's enumerated powers. The Necessary and Proper Clause "empowers Congress to enact laws in effectuation of its [commerce] powe[r] that are not within its authority to enact in isolation." *Raich*, 545 U.S., at 39 (Scalia, J., concurring). Hence, "[a] complex regulatory program ... can survive a Commerce Clause challenge without a showing that every single facet of the program is independently and directly related to a valid congressional

13

goal." *Hodel v. Indiana*, 452 U.S., 314, 329, n.17 (1981). It is enough to show that in the absence of the provision "the regulatory scheme could be undercut." *Lopez,* 514 U.S. at 561. As Justice Scalia made clear: "Congress may regulate even noneconomic local activity if that regulation is a necessary part of a more general regulation of interstate commerce. The relevant question is simply whether the means chosen are 'reasonably adapted' to the attainment of a legitimate end under the commerce power." *Raich,* 545 U.S. at 37 (Scalia, J., concurring) (citation omitted).

Plaintiff-Intervenors also make far too much of the many opinions in *Sebelius*, none of which commanded a majority of the Court. *Sebelius* upheld the Patient Protection and Affordable Care Act, otherwise known as Obamacare, as a valid exercise of the federal power to tax. 567 U.S. at 563-74. Justice Roberts wrote an opinion—joined by no other justice—that argued the individual mandate, which required people without health insurance to purchase it or pay a penalty, violated the Commerce Clause because it compelled participation by people who would not otherwise have participated in the market. *Id*. at 547-61. The Court ultimately upheld the same provision under the Congress' taxing authority. *Id*. at 562-74.

Plaintiff-Intervenors rely primarily on Justice Roberts' opinion but more instructive is a separate opinion by Justices Scalia, Kennedy, Thomas, and Alito, which discusses *Raich* at length. *Id.* at 646-07.[6] First, Justice Scalia makes clear that the Necessary and Proper Clause "supplement[s]" the Commerce Clause. *Id*. at 653. It does not restrict otherwise valid exercises of that enumerated power. Then, he distinguishes cases like *Raich* and *Wickard* that upheld regulation of intrastate activity under the Commerce Clause on the grounds that, unlike the individual mandate, the statutes at issue did not force anyone to participate in a market. This

---

[6] *See also id.* at 589, 619-23 (Ginsburg, Sotomayor, Breyer and Kagan, JJ., dissenting) (criticizing Justice Roberts' Commerce Clause opinion).

"mandating of economic activity," as he puts it, is crucial to understanding *Sebelius* and why it is not at all like the case at bar. *Id*. at 654. Notably, Justice Scalia then uses the example of endangered species protections to show how a regulation can be necessary and proper to the effectuation of the broader statutory scheme. *Id*. at 654 (citing *Andrus v. Allard*, 444 U.S. 51 (1979)). Responding to Justice Ginsburg, he concludes: "It is true enough that Congress needs only a '"rational basis" for concluding that the *regulated activity* substantially affects interstate commerce,' *ante,* at 2616 (emphasis added). But it must be *activity* affecting commerce that is regulated, and not merely the failure to engage in commerce." *Id*. at 657-58.

*Sebelius* is a unique case that is easily distinguished. It did not significantly alter our collective understanding of the Commerce Clause or the Necessary and Proper Clause. There is simply no basis to conclude that it *sub silentio* overruled *GDF Realty* and the other circuit court cases on this issue.

### C.  The Fifth Circuit Recently Reaffirmed *GDF Realty* in *Markle*

Any remaining doubts as to the viability of the Fifth Circuit's decision in *GDF Realty* should be silenced by the court's recent decision in *Markle Interests, LLC v. U.S. Fish & Wildlife Service*. Just last year—after *Raich* and *Sebelius* were decided—the Fifth Circuit reaffirmed *GDF Realty* in an ESA case challenging the constitutionality of critical habitat protections for the dusky gopher frog. *Markle*, 827 F.3d at 475-79. The court reiterated that "the ESA is an economic regulatory scheme," *id*. at 476 (citing *GDF Realty*, 326 F.3d at 639), and that Congress enacted the ESA to "curb species extinction 'as a consequence of economic growth and development untempered by adequate concern and conservation.'" *Id*. (quoting 16 U.S.C. § 1531(a)(1)). Looking back at its decision in *GDF Realty*, the court said:

> We explained that, in the aggregate, takes of all endangered species have a
> substantial effect on interstate commerce. Because of the "interdependence of

> [all] species," we held that regulating the takes of the Cave Species was an essential part of the larger regulatory scheme of the ESA, in that, without this regulation, the regulatory scheme could be undercut by piecemeal extinctions.

*Markle*, 827 F.3d at 477 (internal citations omitted). The court expressly noted that *Raich* supports the logic of *GDF Realty*, finding that where critical habitat protection is "'an essential part of a larger regulation of economic activity,' then whether that process—designation—'ensnares some purely intrastate activity is of no moment.'" *Markle*, 827 F.3d at 477 (quoting *Raich*, 545 U.S. at 17). Notably, Intervenor-Plaintiffs entirely fail to cite *Markle*, despite its relevance as binding precedent in this case.

Since both *GDF Realty* and *Raich* were decided, three other circuit courts—the Ninth, the Eleventh, and most recently the Tenth—have all reached the same conclusion regarding ESA protections for species residing in a single state. *PETPO*, 852 F.3d 990; *San Luis*, 638 F.3d 1163; *ATRC*, 477 F.3d 1250. As these courts all recognize, environmental laws like the ESA directly regulate economic activities, act to prevent externalities stemming from economic activities, and preserve resources for future economic use. To put it another way, "[e]nvironmental laws inevitably regulate and affect commerce because the nation's natural resources supply, after all, what are literally the basic ingredients of commercial life." Richard J. Lazarus, *The Making of Environmental Law* 205 (2005).

### D.  This Court May Not Depart from Circuit Precedent

The doctrine of stare decisis "permits society to presume that bedrock principles are founded in the law, rather than in the proclivities of individuals." *Vasquez v. Hillery*, 474 U.S. 254, 265 (1986). The Fifth Circuit is a "strict *stare decisis* court," and "one aspect of that doctrine to which [it] adhere[s] without exception, is the rule that one panel of this court cannot disregard, much less overrule, the decision of a prior panel." *F.D.I.C. v. Abraham*, 137 F.3d 264,

268 (5th Cir. 1998). Similarly, "[t]his Court … is bound to apply the precedent of the Fifth

Circuit." *J & J Sports Prod. v. Chapman*, No. A-11-CA-532-LY, 2011 U.S. Dist. LEXIS

120242, at *3 (W.D. Tex. Oct. 18, 2011) (J. Yeakel).

The Fifth Circuit follows the doctrine of stare decisis unless "controlling authority has

since made a contrary decision of the law applicable to such issues." *McKay v. Novartis Pharm.*

*Corp.*, 751 F.3d 694, 703 (5th Cir. 2014) (citation omitted). No court has issued such a decision.[7]

As detailed above, neither *Raich* nor *Sebelius* require this circuit to reconsider its prior review of

the ESA. Because *Markle* and *GDF Realty* remain the law of the circuit, this Court may not issue

a contrary ruling.

### III.   Federal Listing and Protection of Endangered Species Under the ESA Does Not Violate the Tenth Amendment

In the Fifth Circuit, the protection of the Bone Cave harvestman is a valid exercise of the

Commerce Clause and would also be sustainable under the Necessary and Proper Clause.

Plaintiff-Intervenors cannot escape this binding precedent by invoking additional constitutional

provisions. The Tenth Amendment is a nullity where, as here, the historic role of the federal

government in wildlife protection is abundantly clear.

The Tenth Amendment states: "The powers not delegated to the United States by the

Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the

people." U.S. Const. Amend. X. As the D.C. Circuit recognized, "Far from encroaching upon

territory that has traditionally been the domain of state and local government, the ESA represents

a national response to a specific problem of 'truly national' concern." *Rancho Viejo, LLC v.*

---

[7] Stare decisis is also controlling unless "the evidence on a subsequent trial was substantially different," or "the decision was clearly erroneous and would work a manifest injustice." *United States v. Hoster*, 70 F.3d 1267, 1267 (5th Cir. 1995) (citations omitted). Plaintiffs do not assert that either of these conditions apply here.

17

*Norton*, 323 F.3d at 1078-79 (quoting *Gibbs,* 214 F.3d at 505 ("the preservation of endangered species is historically a federal function.")). For that reason, the D.C. and Fourth Circuits both concluded that the ESA was consistent with principles of federalism: "'[T]o sustain challenges of this nature 'would require courts to move abruptly from preserving traditional state roles to dismantling historic federal ones.'" *Id*. at 1079-80 (quoting *Gibbs*, 214 F.3d at 504).

Congress has the authority under the Constitution to regulate the take of all species including those that reside in a single state. Congress had a rational basis for believing that regulating the take of purely intrastate species was essential to the ESA's comprehensive regulatory scheme. As the Tenth Circuit recognized: "Approximately sixty-eight percent of species that the ESA protects exist purely intrastate; thus, piecemeal excision of purely intrastate species would severely undercut the ESA's conservation purposes. Put another way, excising purely intrastate species 'would leave a gaping hole in the' ESA." *PETPO*, 852 F.3d at 1007 (quoting *Raich*, 545 U.S. at 22); *see also ATRC*, 477 F.3d at 1275 ("Because a species' scientific or other commercial value is not dependent on whether its habitat straddles a state line, Congress had good reason to include all species within the protection of the Act. It did not behave irrationally by taking the broader approach."). For these reasons, Plaintiff-Intervenors' constitutional attacks on the ESA must fail.

## CONCLUSION

After more than 45 years since the passage of the Endangered Species Act, litigants can no longer credibly question the Act's constitutionality. The matter has been decided in this circuit and five other circuits, and every single case has upheld federal authority to protect the nation's imperiled wildlife. *GDF Realty* and *Markle* are the law of this circuit. This Court simply

18

"cannot disregard, much less overrule," this binding precedent. *F.D.I.C. v. Abraham*, 137 F.3d at

268. Plaintiff-Intervenors' constitutional claims must be set aside.

DATED: December 22, 2017          Respectfully submitted,

                s/ Jason C. Rylander
                Jason C. Rylander (*Pro Hac Vice*)
                (Virginia Bar No. 45827)
                DEFENDERS OF WILDLIFE
                1130 17th Street, N.W.
                Washington, D.C. 20036
                Phone: (202) 682-9400
                Facsimile: (202) 682-1331
                Email: jrylander@defenders.org

                /s/ Ryan Adair Shannon
                Ryan Adair Shannon (*Pro Hac Vice*)
                (Oregon Bar No. 155537)
                CENTER FOR BIOLOGICAL DIVERSITY
                P.O. Box 11374
                Portland, OR 97211-0374
                Phone: (214) 476-8755
                Email: rshannon@biologicaldiversity.org

                Jared Michael Margolis
                 (Oregon Bar No. 146145)
                CENTER FOR BIOLOGICAL DIVERSITY
                2852 Willamette Street #171
                Eugene, OR 97405
                Phone: (802) 310-4054
                Email: jmargolis@biologicaldiversity.org

                Charles W. Irvine
                (Texas Bar No. 24055716)
                Irvine & Conner PLLC
                4709 Austin
                Houston, TX 77004
                Phone: (713) 533-1704
                Facsimile: (713) 524-5165
                Email: charles@irvineconner.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2017, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system which will send notification of such filing to the

following:

Robert E. Henneke
rhenneke@texaspolicy.com
Chance D. Weldon
cweldon@texaspolicy.com
Texas Public Policy Foundation
Center for the American Future
901 Congress Avenue
Austin, TX 78701
Tel:    512.472.2700
Fax:    512.472.2728
*Attorneys for Intervenor-Plaintiffs*

Lesley K. Lawrence-Hammer
lesley.lawrence-hammer@usdoj.gov
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, DC 20044-7611
Tel:    202.305.0217
Fax:    202.305.0275
*Attorneys for Federal Defendants*

Paul S. Weiland
pweiland@nossaman.com
NOSSAMAN LLP
18101 Von Karman Avenue, Suite 1800
Irvine, CA 92612
Tel:    949.833.7800
Fax:    949.833.7878
*Attorney for Plaintiffs*

                                    */s/ Jason C. Rylander*
                                    Jason C. Rylander
                                    DEFENDERS OF WILDLIFE
                                    1130 17th Street, N.W.
                                    Washington, D.C. 20036
                                    Tel:    202.682.9400
                                    Fax:    202.682.1331
                                    jrylander@defenders.org
                                    *Attorney for Plaintiff-Intervenors*

20