# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| AMERICAN STEWARDS OF LIBERTY, *et al*. § § §<br>*Plaintiff*, § § § | |
| | CIVIL ACTION NO. 15-cv-1174-LY |
| JOHN YEARWOOD and WILLIAMSON COUNTY, TEXAS, §<br>*Plaintiff-Intervenors*, § §<br>v. § § | |
| UNITED STATES FISH & WILDLIFE SERVICE, *et al*. §<br>*Defendants*. § § § | |

**Plaintiff-Intervenors' Combined Reply in Support of
Motion for Summary Judgment and Opposition to
<u>Federal Defendants and Defendant-Intervenors' Cross-Motions for Summary Judgment</u>**

#5612665

# TABLE OF CONTENTS

                                                **Page**

I.   Introduction and summary. ...............................................................................................1

II.   Defendants' briefing confirms there are no material facts in dispute. ................................2

III.   Defendants fail to refute the animating truth of this case: the law has changed..................2

    a.   *GDF Realty* is no longer binding on this Court because of subsequent Supreme Court and Fifth Circuit decisions............................................................3

    b.   *Markle* does nothing to revive *GDF Realty* in the context of this case. ..................5

IV.   The Regulation of Bone Cave Harvestman Takes fails the correct test under the Necessary and Proper Clause..............................................................................................7

V.   Even if the third *Lopez* category remained the standard, the Fifth Circuit has subsequently rejected the no-evidence version of rational-basis scrutiny taken in *GDF Realty*. ........................................................................................................................12

VI.   Plaintiff-Intervenors claims are not barred by the Statute of Limitations because Yearwood challenged the Service's listing of the BCH in 2014. .......................................13

VII.   Conclusion and prayer. .......................................................................................................15

I. **Introduction and summary.**

Federal Defendants and Defendant-Intervenors (collectively, "Defendants") fail to raise any triable fact issue and, for the reasons stated in Plaintiff-Intervenors' motion for summary judgment [ECF 133] and this reply, Plaintiff-Intervenors are entitled to judgment as a matter of law. For the same reasons, Federal Defendants and Defendant-Intervenors' cross-motions for summary judgment [ECF 145, 146, 151, 152] should be denied.

Ultimately, this case is here because of an evolution in constitutional law. In many ways, it boils down to how a Commerce Clause inquiry should be sequenced—is the correct analytical order to apply *Lopez*[1] category 1, category 2, category 3, and if the regulation cannot be justified under those categories, then apply the heightened Necessary and Proper Clause analysis, or, as Supreme Court and Fifth Circuit precedent mandate, is the order *Lopez* category 1, category 2, and then the heightened Necessary and Proper Clause analysis? The proper analysis follows because *Lopez* category 3 may only be justified under the Necessary and Proper Clause under the *Raich* line of cases that supersede *GDF Realty*. The Supreme Court and Fifth Circuit have confirmed the latter approach is correct, but Plaintiff-Intervenors prevail here either way.

It is undisputed that the first two *Lopez* categories do not control here. As for the third *Lopez* category, the no-evidence rational basis approach taken in *GDF Realty* is no longer the proper standard for scrutinizing a federal regulation under the Necessary and Proper Clause or under the prior Commerce Clause approach. Applying the now-controlling standards here, the challenged regulation of the Bone Cave Harvestman (BCH) under the Endangered Species Act (ESA) and prohibition on its take exceed the limits of the Constitution.

---

[1] *United States v. Lopez*, 514 U.S. 549 (1995).

## II. Defendants' briefing confirms there are no material facts in dispute.

There is no genuine dispute between Plaintiff-Intervenors and Federal Defendants as to any material fact. While the parties disagree about the necessity of listing the BCH under the ESA, that disagreement is not material to the constitutional question presented here. Indeed, Federal Defendants' short recitation of facts in their briefing[2] does not dispute:

- The BCH lives solely in in two Texas counties.[3]

- The species has "little or no ability to move appreciable distances on the surface."[4]

- BCH takes do not have a substantial effect on the ecosystem as a whole.[5]

- There is no commercial market for the BCH and any future market is "conjecture".[6]

- The BCH has never been bought or traded, nor does the species generate tourism.[7]

Defendant-Intervenors' briefing similarly does not call any material facts into dispute.[8] In short, Federal Defendants and Defendant-Intervenors' briefing confirms that the issue before this Court is a pure question of law about the Federal Defendants' constitutional power to regulate a species that is found solely within one state and for which there is no commercial market.

## III. Defendants fail to refute the animating truth of this case: the law has changed.

Significant jurisprudential developments since *GDF Realty* have altered how federal courts address challenges to federal regulation of non-economic local activity. The changes, which have

---

[2] ECF 133 at 4-5.
[3] *See* 53 Fed. Reg. 36,029-30; *GDF Realty Investments, Ltd. v. Norton*, 326 F.3d 622, 625 (5th Cir. 2003).
[4] 53 Fed. Reg. 36,032.
[5] *See* 53 Fed. Reg. 36,030.
[6] *See GDF Realty*, 326 F.3d at 638.
[7] *Id*. at 638.
[8] ECF 152 at 3.

been recognized by the Fifth Circuit, since *GDF Realty* are irreconcilable with *GDF Realty*'s Commerce Clause framework.

      a.     ***GDF Realty* is no longer binding on this Court because of subsequent Supreme Court and Fifth Circuit decisions.**

It is "well-settled law that a district court may recognize when a precedent has been explicitly or implicitly overruled by a subsequent Supreme Court decision." *Does 1-7 v. Round Rock Indep. Sch. Dist.*, 540 F. Supp. 2d 735, 749 (W.D. Tex. 2007) (quotation and citation omitted). "In that circumstance, 'the District Judge is free to disregard circuit precedent that is contrary to the rule pronounced by the court possessing final authority to decide that particular question of law.'" *Id.* (quoting *EEOC v. Sidley Austin Brown & Wood LLP*, 406 F. Supp. 2d 991, 996 (D. Ill. 2005), *aff'd* 437 F.3d 695, 696 (7th Cir. 2006)).

This Court is not bound to apply, and should not apply, the Commerce Clause framework in *GDF Realty* because the methodology employed by that Court was overruled by subsequent Supreme Court and Fifth Circuit decisions. Specifically, the Supreme Court decided that the third *Lopez* category should be interpreted under the Necessary and Proper Clause, rather than the Commerce Clause reasoning used by the Fifth Circuit in *GDF Realty*. *See Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012); *Gonzales v. Raich*, 545 U.S. 1, 34 (2005) (Scalia, J., concurring).

*Raich* and *Sebelius* explain that the third prong of *Lopez* implicates Congress's authority under the Necessary and Proper Clause, not the Commerce Clause directly. *See Raich*, 545 U.S. at 34 (Scalia, J., concurring) ("[U]nlike the channels, instrumentalities, and agents of interstate commerce, activities that substantially affect interstate commerce are not themselves part of interstate commerce, and thus the power to regulate them cannot come from the Commerce Clause alone. Rather, as this Court has acknowledged since at least *United States v. Coombs*, 12 Pet. 72

(1838), Congress's regulatory authority over intrastate activities that are not themselves part of interstate commerce (including activities that have a substantial effect on interstate commerce) derives from the Necessary and Proper Clause.").

Importantly, the Fifth Circuit itself recognized and adopted this shift in the law in *United States v. Whaley*, 577 F.3d 254 (5th Cir. 2009). In *Whaley*, the Fifth Circuit adopted the now widely-held view[9] that Justice Scalia's *Raich* concurrence accurately describes the Supreme Court's approach to analyzing regulation of non-economic local activity. The Circuit confirmed, "[a]s Justice Scalia has explained in the context of the third *Lopez* category, the Necessary and Proper Clause gives Congress the power to 'regulate even noneconomic local activity if that regulation is a necessary part of a more general regulation of interstate commerce.'" *Id.* at 260 (quoting *Raich*, 545 U.S. at 35-37 (Scalia, J., concurring) (citation omitted in original)).

In spite of these directives from the Fifth Circuit, Defendant-Intervenors argue "there is no need to consider the Necessary and Proper Clause separately" because "Congress' authority to protect all species via the ESA is demonstrably rooted in the Commerce Clause." ECF 152 at 12. Their statement directly contradicts *Whaley*. In support of that statement, Defendant-Intervenors cite a Tenth Circuit case, *People for Ethical Treatment of Property Owners v. United States Fish & Wildlife Service*[10] ("*PETPO*") and attempt to minimize Justice Scalia's concurrence in *Raich*.

---

[9] At least three other federal circuits similarly recognized that Justice Scalia's opinion from *Raich* is controlling and that the third *Lopez* category must be analyzed under the Necessary and Proper Clause. *See, e.g.*, *United States v. Guzman*, 591 F.3d 83, 91 (2d Cir. 2010) (adopting the reasoning of Justice Scalia's concurrence, interpreting *Raich* as a Necessary and Proper Clause case); *United States v. Sullivan*, 451 F.3d 884, 888-90 (D.C. Cir. 2006) (same); *United States v. Anderson*, 771 F.3d 1064, 1068-71 (8th Cir. 2014) (interpreting *Raich* and *Sebelius* as Necessary and Proper Clause cases).

[10] 852 F.3d 990, 993 (10th Cir. 2017), cert. denied sub nom. *People for Ethical Treatment of Prop. Owners v. U.S. Fish & Wildlife Serv.*, No. 17-465, 2018 WL 311835 (U.S. Jan. 8, 2018). This case is discussed below in greater detail.

But again, this Circuit has recognized that the Commerce Clause inquiry—specifically, the third *Lopez* category—necessarily implicates the Necessary and Proper Clause. *See Whaley*, 577 F.3d at 260. In order for *PETPO* to be persuasive, Defendant-Intervenors need to show that the Tenth Circuit has adopted a *Whaley*-like approach to the third *Lopez* factor. They cannot make this showing as the Tenth Circuit has long held, contrary to the Fifth Circuit, that the majority opinion in *Raich*—not Justice Scalia's concurrence—is controlling. *See PETPO*, 852 F.3d at 1005 n.8; *United States v. Patton*, 451 F.3d 615, 623 (10th Cir. 2006).[11]

Defendants attempt to side step the implications of *Raich* and *Sebelius* by resorting to parsing the opinions to cast doubt on whether the statements regarding the Commerce Clause analysis are binding precedent. Federal Defendants and Defendant-Intervenors' attempts at vote counting and highlighting separate writings are unpersuasive[12] because the Fifth Circuit has already resolved this question in *Whaley*. Despite the core theme of their case being strict adherence to Circuit precedent, Federal Defendants offer no analysis of *Whaley* nor offer an explanation of why it should not be followed by this Court. Instead, they simply rely on one case, *Markle*, that supposedly revived *GDF Realty*.

    **b.**    *Markle* **does nothing to revive** *GDF Realty* **in the context of this case.**

Federal Defendants claim that the Fifth Circuit "expressly reaffirmed" *GDF Realty* in *Markle Interests, L.L.C. v. U.S. Fish & Wildlife Service*.[13] Defendant-Intervenors essentially parrot

---

[11] Indeed, the Tenth Circuit did not analyze the Necessary and Proper Clause in *PETPO* precisely because the plaintiffs in that case, as well as Tenth Circuit precedent, argued that the Necessary and Proper Clause is only implicated if the regulation cannot be justified under the first three *Lopez* categories—a position rejected by Plaintiff-Intervenors here, and the Fifth Circuit. *See PETPO*, 852 F.3d at 1008 ("Because we uphold this regulatory exercise under an enumerated power, the Commerce Clause, we need not consider its constitutionality under the Necessary and Proper Clause.").

[12] *See* ECF 145 at 11-12, see also ECF 152 at 11, 13-15.

[13] 827 F.3d 452 (5th Cir. 2016), *rehearing en banc denied*, 848 F.3d 635, *cert. filed.* No. 17-71; ECF 145 at 2.

the argument, claiming *GDF Realty* was "recently reaffirmed." ECF 152 at 15. Both are incorrect for at least three reasons.

First, the take provision of the ESA was not at issue in *Markle*. That case involved a statutory and constitutional challenge to the Service's designation of particular private land as a critical habitat for the dusky gopher frog. *Markle*, 827 F.3d at 458, 476 ("The Landowners' constitutional challenge can be distilled to the question of whether we can properly analyze the Unit 1 designation aggregated with all other critical-habitat designations nationwide."). The *Markle* plaintiffs assumed that *GDF Realty* was rightly decided, but attempted to distinguish critical habitat designations from species takes—an argument the court quickly rejected. The majority of the discussion and conflict in *Markle* turned on statutory construction issues.[14]

Second, the core issue in this case was not raised in *Markle*. Federal Defendants here argue that "[h]ad *Raich* somehow overruled *GDF Realty*, *sub silentio*, surely the Fifth Circuit would not have let the *GDF Realty* decision stand." But the *Markle* Plaintiffs did not ask the court to reconsider *GDF Realty* and neither the Plaintiffs nor the court mentioned the application of the Necessary and Proper Clause, which is the specific issue in this case. Plaintiff-Intervenors do not claim *GDF Realty* is entirely bad law—in fact, we already conceded "*GDF Realty* is controlling on most issues in this case." ECF 133 at 16. Instead, the key to this case is that the regulation of

---

[14] Most of the discussion of *GDF Realty* in *Markle* is dicta because it was unnecessary to the holding. *See United States v. Segura*, 747 F.3d 323, 328 (5th Cir. 2014) ("A statement is dictum if it could have been deleted without seriously impairing the analytical foundations of the holding and being peripheral, may not have received the full and careful consideration of the court that uttered it. A statement is not dictum if it is necessary to the result or constitutes an explication of the governing rules of law.") (internal quotation marks omitted). The *Markle* court mentions *GDF Realty*'s Commerce Clause analysis merely to note that its logic is consistent with the logic applied to the distinct issue of habitat designations. *See Markle*, 827 F.3d at 476 (explaining that the Fifth Circuit already concluded that the ESA is an economic regulatory scheme but holding that alone was not sufficient to decide the issue facing the court and then unnecessarily describing *GDF Realty*'s Commerce Clause analysis).

intrastate non-commercial activities—the third *Lopez* category—is now analyzed under the Necessary and Proper Clause rather than the Commerce Clause. That specific issue was not briefed by either party in *Markle*. *Markle* simply is not helpful precedent as to issues that were not raised, considered, or decided. *De La Paz v. Coy*, 786 F.3d 367, 373 (5th Cir. 2015) ("[A]ccording to black letter law, 'a question not raised by counsel or discussed in the opinion of the court' has not 'been decided merely because it existed in the record and might have been raised and considered.'") (quoting *United States v. Mitchell*, 271 U.S. 9, 14 (1926)).

Third, *Whaley* is now controlling in this circuit with regard to the third *Lopez* category and *Markle* did not call *Whaley* into question. Indeed, *Whaley* was not analyzed, or even mentioned, by the *Markle* court. *See* 827 F.3d 452. *Markle* could not overturn *Whaley* because it did not even address *Whaley*. *See Coy*, 786 F.3d at 373.

IV. **The Regulation of Bone Cave Harvestman Takes fails the correct test under the Necessary and Proper Clause.**

Federal Defendants wrongly argue that even if this Court must address the Necessary and Proper Clause, the analysis would be the same as under the Commerce Clause. But, the purely hypothetical, ecosystem-equals-commerce approach to the Commerce Clause applied in *GDF Realty*[15] is superseded by the evidence-based scrutiny now required by this circuit under the Necessary and Proper Clause. At the time *GDF Realty* was decided, the court employed a lenient form of rational basis scrutiny. Under that outdated deferential version of rational-basis scrutiny, a court need not determine whether the regulations actually affect interstate commerce in fact, but only whether a hypothetical "rational basis" exists for so concluding. *GDF Realty*, 326 F.3d at 627. The *GDF Realty* court was thus able to conclude, despite all evidence to the contrary, that regulation of BCH had a substantial impact on interstate commerce, because de-regulation *could*

---

[15] And also applied by the Tenth Circuit in *PETPO*.

hypothetically result in BCH extinction, which *could* affect unidentified other species, which *could* affect interstate commerce. Defendant-Intervenors in this case have aptly described this evidence-free standard as holding that "the federal government has ample authority to protect the nation's biodiversity heritage wherever it may reside and *no matter its specific impact on commerce*." ECF 152 at 8 (emphasis added). Again, this statement is in direct conflict with the standard in *Sebelius*.

The Necessary and Proper Clause requires that regulations be necessary—i.e., "plainly adapted"—to the regulation of commerce. *Sebelius*, 567 U.S. at 537. To be "plainly adapted," a regulation must be (1) "narrow in scope," and (2) "incidental" to the regulation of commerce. *Id.* at 560 (Roberts, C.J.). Further, the Necessary and Proper Clause adds an additional level of protection, by requiring that regulations also must be "proper"—i.e., within the "letter and spirit of the constitution" and in accord with the traditional balance of power between the federal government and the states. *Id.* at 537.

At a minimum, this standard requires some consideration of the connection between the activity regulated and interstate commerce, and some consideration of the effect that allowing such regulations will have on the balance of federal versus state authority. *Reid v. Covert*, 354 U.S. 1, 66 (1957) (Harlan, J., concurring) ("[T]he constitutionality of the statute . . . must be tested, not by abstract notions of what is reasonable 'in the large,' so to speak, but by whether the statute, as applied in these instances, is a reasonably necessary and proper means of implementing a power granted to Congress by the Constitution."); *United States v. Comstock*, 560 U.S. 126, 153 (2010) (Kennedy, J., concurring) ("It is of fundamental importance to consider whether essential attributes of state sovereignty are compromised by the assertion of federal power under the Necessary and Proper Clause.").

The regulation of BCH takes cannot meet this standard. First the regulation is not necessary—i.e. "plainly adapted"—to the regulation of commerce. The uncontested facts in the record show that BCH have no impact on interstate commerce whatsoever. Indeed, there is no evidence that anything that preys on BCH has an impact on interstate commerce. Given their limited range and bio-mass, if BCH disappeared tomorrow,[16] it would not have a substantial impact on the ecosystem. Any connection between regulating BCH takes and regulating interstate commerce is only achieved by "pil[ing] inference upon inference in a manner that would bid fair to convert congressional Commerce Clause authority to a general police power of the sort held only by the States." *See Lopez*, 514 U.S. at 567; *see also GDF Realty Investments, Ltd. v. Norton*, 362 F.3d 286, 287 (5th Cir. 2004) ("For the sake of species of 1/8-inch-long cave bugs, which lack any known value in commerce, much less interstate commerce, the [GDF Realty] panel crafted a constitutionally limitless theory of federal protection.") (Jones, J., dissenting from denial of rehearing en banc, joined by four other judges). Regulation of the BCH is therefore not narrow in scope—it is a broad ranging grant of land use authority to the federal government. And it is not incidental to the regulation of interstate commerce—the BCH is not a fungible commodity to which some exception may apply.

Second, the regulation of BCH takes is not "proper" because it upsets the traditional balance of power between the federal government and the states. The ecosystem-equals-commerce

---

[16] Obviously, Plaintiff-Intervenors do not want the BCH to disappear. And indeed, the State of Texas, Williamson County, and the City of Georgetown have regulations in place to ensure that does not happen. *See,e.g*, Texas Commission on Environmental Quality, Edwards Aquifer Rules, https://www.tceq.texas.gov/assets/public/comm_exec/pubs/rg/rg348/rg-348.pdf; City of Georgetown Resolution No. 122013-C, https://www.fws.gov/southwest/es/Documents/R2ES/4TX_Sal_pLpCH_City_of_Georgetown_Resolution_122013C.pdf; Plaintiff-Intervenors' Amended Complaint, ECF 112, at ¶ 39-24 (explaining the County's BCH preservation efforts, which go beyond what is required under the ESA listing).

approach of *GDF Realty* has no limiting principle. As Defendant-Intervenors concede, it allows federal regulation of purely intrastate, non-commercial activity "wherever it may reside and no matter its specific impact on commerce." ECF 152 at 8. Such far-reaching authority cannot be what the framers of the Constitution intended. It effectively eliminates both key terms of the Commerce Clause ("interstate" and "commerce") and leaves us with the bare pronouncement that "Congress shall have the authority to regulate."[17]

Defendant-Intervenors cherry pick quotes from Justice Scalia's *Sebelius* dissent to claim he "makes clear that the Necessary and proper Clause 'supplement[s]' the Commerce Clause.'" ECF 152 at 14. But Chief Justice Roberts defined implied powers of the Necessary and Proper Clause as "derivative of, and in service to, a granted power," "narrow in scope," and "incidental" to an enumerated power. *Sebelius*, 567 U.S. at 560 (Roberts, C.J.). And consistent with the Framers' understanding, he rejected "a conception of the Necessary and Proper Clause [that] would work a substantial expansion of federal authority," *id.*, or would "license the exercise of any 'great substantive and independent power' beyond those specifically enumerated," *id.* at 559 (quoting *McCulloch v. Maryland*, 17 U.S. 316, 411 (1819)).[18] Indeed, Justice Scalia's full statement was: "[T]he Commerce Clause, even when supplemented by the Necessary and Proper

---

[17] Federal Defendants do not attempt to address this implication or to distinguish any of the cases cited for the proposition that the Necessary and Proper Clause requires a different level of scrutiny than the Commerce Clause alone. Indeed, rather than confronting the Necessary and Proper Clause analysis, Federal Defendants simply rely on *PETPO*, a decision from a panel of the Tenth Circuit that is at odds with Fifth Circuit precedent. As explained in Plaintiff-Intervenor's Motion for Summary Judgment, not only was the Necessary and Proper Clause issue not briefed in *PETPO*, the *PETPO* opinion is inconsistent with the Fifth Circuit's decisions in *Whaley* and *St. Joseph Abby*. Relatedly, the Tenth Circuit, unlike the Second, Fifth, Eighth, and D.C. Circuits, has yet to recognize that the proper approach to the third *Lopez* category involves the Necessary and Proper Clause. *PETPO* was wrongly decided as a matter of constitutional law, but it is not binding on this Court regardless.

[18] Amici The State of Texas offers the Court an excellent analysis of this issue. *See* ECF 137.

Clause, is not *carte blanche* for doing whatever will help achieve the ends Congress seeks by the regulation of commerce. And [*Lopez* and *Morrison*] show that the scope of the Necessary and Proper Clause is exceeded not only when the congressional action directly violates the sovereignty of the States but also when it violates the background principle of enumerated (and hence limited) federal power." *Sebelius*, 567 U.S. at 653 (Scalia, J., dissenting). He continued, stating the "Court has insisted on careful scrutiny of regulations that do not act directly on an interstate market or its participants." *Id.* This case likewise requires careful scrutiny because the regulation of BCH take has no direct, non-hypothetical, impact on an interstate market or its participants.

Similarly, Defendant-Intervenors attempt to seize on Justice Scalia writing, in direct response to Justice Ginsburg, that "It is true enough that Congress needs only a 'rational basis for concluding that the *regulated activity* substantially affects interstate commerce.' But it must be *activity* affecting commerce that is regulated, and not merely the failure to engage in commerce." *Id.* at 657-58 (citation omitted). But this polite, "true enough" simplification to stay focused on the issue at hand, does nothing to alter a full and nuanced understanding of the Commerce Clause. *See True Enough*, Farlex Dictionary of Idioms, https://idioms.thefreedictionary.com/true+enough ("True, at least technically so, but not indicative of the full truth or all the details of the situation."). The "plainly adapted" standard for Necessary and Proper Clause cases that was adopted by the majority opinion in *Sebelius* has a pedigree dating back to *McCulloch v. Maryland*[19] and has long been understood to require more than rational-basis scrutiny. Indeed, in the same opinion Defendant-Intervenors cite, Justice Scalia notes that the Necessary and Proper Clause requires "*careful scrutiny* of regulations that do not act directly on an interstate market or its participants" and a separate evaluation of whether such regulations

---

[19] 17 U.S. 316 (1819).

"violate[] the sovereignty of the States…[or] the background principle of enumerated (and hence limited) federal power." *Sebelius*, 567 U.S. at 653 (Scalia, J., dissenting) (emphasis added). That standard is wholly inconsistent with the simple means-ends analysis required by rational-basis scrutiny and instead mirrors the standard urged by Plaintiff-Intervenors in this case.

V. **Even if the third *Lopez* category remained the standard, the Fifth Circuit has subsequently rejected the no-evidence version of rational-basis scrutiny taken in *GDF Realty*.**

Even if this Court has doubts about the extent to which the Necessary and Proper Clause controls the third *Lopez* category, as a separate matter, the Fifth Circuit no longer applies the hyper-deferential no-evidence approach to rational-basis scrutiny that was applied in *GDF Realty*.

Under the previous deferential version of rational-basis scrutiny, a court need not determine whether the regulations actually affect interstate commerce in fact, but only whether a hypothetical "rational basis" exists for so concluding. *GDF Realty*, 326 F.3d at 627. The *GDF Realty* court concluded, without any evidence, that extinction of the BCH *could* affect all species and, therefore, *could* substantially affect interstate commerce. *See id.* That is no longer sufficient in this circuit. *See St. Joseph Abbey v. Castille*, 712 F.3d 215, 223 (5th Cir. 2013) ("Our analysis does not proceed with abstraction for hypothesized ends and means do not include post hoc hypothesized facts.").

In *St. Joseph's Abbey*, the court considered a regulation that required caskets to be sold by licensed funeral directors. The State argued that there was a rational basis for the regulation because it was designed to protect consumers from deceptive trade practices and to protect public health from defective caskets allowing human remains to seep out. The court did not merely accept these rational, but hypothetical, justifications for the law. Instead, the court examined the record and concluded that it contained no evidence that the regulations would protect consumers or that "sellers of funeral goods are engaged in widespread unfair or deceptive acts or practices." *Id.* at

225. Likewise, there was no evidence that the regulations had any effect on public safety. The record showed that the regulations did not require any public safety expertise, and the state had elsewhere found that sealed caskets were not necessary for public safety. *Id.* at 226. Accordingly, the court concluded that there was no rational basis for the casket regulation. *Id.*

In *GDF Realty*, and in this case, the government argues that because of the "interconnectedness of species" activities that affect the BCH necessarily have a substantial impact on interstate commerce. But, as in *St. Joseph's Abbey*, this purely hypothetical justification is simply not supported by the record. In fact, everything in the record points the other direction—BCH takes have no effect on interstate commerce at all. The regulation of BCH takes therefore cannot survive under the current version of rational basis scrutiny practiced in the Fifth Circuit.

VI. **Plaintiff-Intervenors claims are not barred by the Statute of Limitations because Yearwood challenged the Service's listing of the BCH in 2014.**

Defendants are correct that, in general, APA challenges must be brought "within six years after the right of action first accrues." 28 U.S.C. § 2401(a). Yet this action is timely because it accrued in June 2015 when the Service announced its negative findings towards Plaintiffs and Plaintiff-Intervenor Yearwood's petition to delist the BCH from the Endangered Species List. *See* 80 Fed. Reg. 30,990, 30,99; *Delisting Petition* at 6, ECF 113-Exhibit 1.[20] Mr. Yearwood was one

---

[20] Plaintiff-Intervenor Williamson County was not party to the petition but has suffered concrete and similar injuries to the parties who did file the petition. The relief it seeks is identical. It would be an unjust waste of municipal and judicial resources to require Williamson County to manufacture a separate agency action after the Service has issued a negative finding on the exact regulation the County would challenge. *See Dunn-McCampbell Royalty Interest, Inc. v. Nat'l Park Serv.*, 112 F.3d 1283, 1290 (5th Cir. 1997) (Jones, J., dissenting) ("In my view, it is a waste of time to require as a prerequisite to suit that [plaintiff] manufacture 'agency action' by petitioning the . . . Service to revoke its regulations and suffering—at some time in the possibly remote future—the inevitable rebuff."). The Service has already been given an opportunity to resolve this matter without judicial intervention and the process has already generated a fulsome administrative record for review. No interests are advanced by requiring the County to engage in the folly described by Judge Jones.

of the filers of the delisting petition that led to the filing of this lawsuit. In fact, he was the first signatory:[21]

> We, the Petitioners, respectfully submit this petition to delist the federally endangered Bone Cave harvestman *(Texella reyesi)* to the U.S. Fish and Wildlife Service (USFWS) for consideration pursuant to Section 4 of the Endangered Species Act (ESA) of 1973, as amended.
>
> *[signature]*
> John F. Yearwood
> ▮▮▮▮▮▮▮
> Georgetown, Texas 78633

Defendants attempt to conflate Plaintiff Intervenors' challenge to the recent negative 90-day finding with a challenge to the original listing, but the fact that this lawsuit is based on the negative 90-day finding is clear on the face of the pleadings. *See* Plaintiff-Intervenors' Amended Complaint at 12 [ECF 112]. It is well established that a party may challenge the constitutional authority of a regulation more than six-years after its adoption "by filing a petition to rescind regulations and appealing the denial of the petition." *Wind River Min. Corp. v. United States*, 946 F.2d 710, 714–15 (9th Cir. 1991) (citing *Citizen v. Nuclear Regulatory Comm'n,* 901 F.2d 147, 152 (D.C. Cir.); *Dunn-McCampbell Royalty Interest, Inc. v. Nat'l Park Serv.*, 112 F.3d 1283, 1287–88 (5th Cir. 1997) ("[I]f they had petitioned the National Park Service to change the 9B regulations and been denied, this court might have jurisdiction to hear that case.").[22] This is

---

[21] *Delisting Petition* at 6, ECF 113-Exhibit 1.
[22] Indeed, there is some question as to whether challenges to an agencies' underlying constitutional authority are subject to the six-year limitation period at all. *See, e.g,. Dunn-McCampbell Royalty Interest, Inc. v. Nat'l Park Serv.*, 112 F.3d 1283, 1287 (5th Cir. 1997) ("It is permissible "to challenge a regulation after the limitations period has expired [as to an initial regulation or listing], provided that the ground for the challenge is that the issuing agency exceeded its constitutional or statutory authority."); *Conner v. U.S. Dep't of the Interior*, 73 F. Supp. 2d 1215, 1218 (D. Nev. 1999) ("[I]f plaintiffs' challenge merely raises a procedural violation with regard to agency action, then the challenge must be brought within six years of the action. If, on the other hand, plaintiffs'

because "an agency's application of a rule to a party creates a new, six-year cause of action to challenge to the agency's constitutional or statutory authority." *Id.*; *see also Fulbright v. McHugh*, 67 F. Supp. 3d 81, 92 (D.D.C. 2014), *aff'd sub nom Fulbright v. Murphy*, 650 Fed. Appx. 3 (D.C. Cir. 2016) ("The [D.C.] Circuit similarly has explained that '[i]f for any reason the agency reopens a matter and, after reconsideration, issues a new and final order, that order is reviewable on its merits, even though the agency merely reaffirms its original decision.'").

In explaining the justification behind each of these rules the Fifth Circuit has noted that "unlike ordinary adjudicatory orders, administrative rules and regulations are capable of continuing application." *Texas v. United States*, 749 F.2d 1144, 1146 (5th Cir. 1985), *cert. denied*, 472 U.S. 1032, (1985). Accordingly, "limiting the right of review of the underlying rule would effectively deny many parties ultimately affected by a rule an opportunity to question its validity." *Id.* Therefore, "when an agency *applies* a rule, the limitations period running from the rule's publication will not bar a claimant from challenging the agency's statutory authority." *Dunn-McCampbell*, 112 F.3d at 1287 (citing *Texas*, 749 F.2d at 1146).

Plaintiff-Intervenor Yearwood's 2014 petition to delist the BCH, and the Service's June 2015 denial of the petition, was therefore a "final agency action" sufficient to create a new cause of action under the APA in the context of a challenge alleging that the Service exceeded its constitutional or statutory authority. *See id.* at 1287. Accordingly, Plaintiff-Intervenors' lawsuit is well within the statute of limitations.

## VII. Conclusion and prayer.

The listing of the BCH under the ESA and prohibition on its take exceeds Congress's authority under the Commerce Clause and the Necessary and Proper Clause. Plaintiff-Intervenors'

---

challenge raises the question of whether the action exceeded the agency's constitutional or statutory authority, then the challenge may be brought more than six years after agency action.").

motion for summary judgment should be granted and Federal Defendants and Defendant-Intervenors cross-motions for summary judgment should be denied.

Dated: January 19, 2018.

Respectfully submitted,

*/s/ Robert Henneke*
ROBERT HENNEKE
Texas Bar No. 24046058
rhenneke@texaspolicy.com
CHANCE WELDON
Texas Bar No. 24076767
cweldon@texaspolicy.com
Texas Public Policy Foundation
Center for the American Future
901 Congress Avenue
Austin, TX 78701
Phone: 512-472-2700

CHAD ENNIS
Texas Bar No. 240045834
chad.ennis@bracewelllaw.com
KEVIN D. COLLINS
Texas Bar No. 24050438
kevin.collins@bracewelllaw.com
BRACEWELL LLP
111 Congress Avenue, Suite 2300
Austin, TX 78701
Phone: 512-472-7800

*Attorneys for Plaintiff-Intervenors John Yearwood and Williamson County, Texas*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 19, 2018, a true and correct copy of the foregoing was served via electronic means to all parties entitled to receive notice in this case through the Court's ECF system.

*/s/ Chad Ennis*
Chad Ennis