UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| AMERICAN STEWARDS OF | § | |
| LIBERTY, et al. | § | |
|     *Plaintiffs,* | § | |
| | § | |
| v. | § | No. 1:15-cv-01174-LY |
| | § | |
| UNITED STATES FISH & WILDLIFE | § | |
| SERVICE, et al. | § | |
|     *Defendants.* | § | |

## PLAINTIFFS' OPPOSITION TO FEDERAL DEFENDANTS' MOTION TO STRIKE

Plaintiffs American Stewards of Liberty, Kathryn Heidemann, Cheryl and Charles Shell, the Walter Sidney Management Trust, and Robert V. Harrison, Sr. (collectively, "Plaintiffs") respond and hereby oppose Defendants' Opposed Motion to Strike Four Exhibits Attached to Plaintiffs' Reply Brief ("Defendants' Motion") (Dkt. No. 159). Plaintiffs' Request for Judicial Notice ("Plaintiffs' Request") (Dkt. No. 156-5) of a recent U.S. Fish and Wildlife Service ("Service") Technical Manual titled *Technical Reference on Using Surrogate Species for Landscape Conservation* ("Technical Reference") and peer-reviewed articles published in renowned scientific journals cited by the Service in its Technical Reference (collectively, the "Four Exhibits") is proper under Federal Rule of Evidence 201(d). As explained more fully below, Plaintiffs have not requested that this Court rely on the Four Exhibits to resolve any factual dispute among the parties, and courts have held that it is proper to take judicial notice of agency guidance and other documents. Further, the Service has cited to its own guidance in other cases, even where such guidance is not part of the agency's administrative record for review of a specific, challenged action.

**ARGUMENT**

## I.   DEFENDANTS MISCHARACTERIZE THE PURPOSE OF PLAINTIFFS' REQUEST

In Plaintiffs' Consolidated Reply to Defendants' and Intervenor-Defendants' Responses to Plaintiffs' Motion for Summary Judgment ("Plaintiffs' Reply"), Plaintiffs state that "there is widespread agreement among conservation biologists that it is inappropriate to assume that one species is a proper surrogate for another." Pls.' Reply, Dkt. No. 156, at 6. Excerpts from the Four Exhibits demonstrate that the Service and conservation biologists do, in fact, agree that there must be significant scientific information supporting the use of a surrogate species. *E.g.,* , Pls.' Reply at 6 (citing Technical Reference at 64) ("While using surrogate species reduces that total number of species needing evaluation, substantial effort, including data collection, must occur to . . . ensure the validity of their use.") (included as Dkt. No. 156-5, Ex. 1); *see also* Seth J. Wenger, *Use of Surrogates to Predict the Stressor Response of Imperiled Species*, 22 Conservation Biology 1564 (2008) (explaining that it is improper to assume one species can be used interchangeably as a surrogate for another species and describing a four-step process to validate a potential surrogate relationship) (included as Dkt. No. 156-5, Ex. 4). The Four Exhibits demonstrate that the Service and experts in the field of conservation biology agree that it is improper to assume that one species is an appropriate surrogate for another and that the surrogate relationship should first be validated. The fact that the scientific community is in agreement on this point is not subject to reasonable dispute; therefore, it violates neither the plain language nor the intent of Federal Rule of Evidence 201(b).

Defendants cite *SB International, Inc v. Jindal*, as support for their claim that Plaintiffs' Request should be denied because Plaintiffs requested judicial notice be taken of "entire documents attached in the Four Exhibits." Defs' Mot. to Strike ("Defs.' Mot."), Dkt. No. 159 at 2 (citing *SB Int'l, Inc. v. Jindal*, No. 3:06-cv-1174, 2007 WL 1411042, at *2 (N.D. Tex. May 14, 2007) ("*SB Int'l*")). Defendants' reliance on *SB Int'l*, however, is misplaced. That case involved a defendant's request that a court take judicial notice of various documents filed in another court.

*SB Int'l* at \*1-2.  The court in *SB Int'l* noted that in the Fifth Circuit a court may take judicial notice of documents "filed in another court . . . to establish the fact of such litigation and related filings, but cannot take notice of the factual findings of another court."  *Id*. at \*1 (citing *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 829 (5th Cir. 1998) (internal quotations omitted)).  The *SB Int'l* court did not, as Defendants imply, strike a request for judicial notice because a party "failed to specify whether he wanted judicial notice of the fact of the documents' existence or the facts contained within them[;]" rather, the court **granted** the request for judicial notice "of the fact that these documents exist and were filed in the courts shown on the first page of each document" and denied judicial notice to the extent that judicial notice was being requested to resolve factual issues.  *Id*. at \*2.  *SB Int'l* simply did not address the issue for which Defendants rely upon it.  The defendant in *SB Int'l* included entire documents in his request for judicial notice, and the court granted, in part, the defendant's request.

Defendants mischaracterize the purpose of Plaintiffs' Request.  That the scientific community urges careful use of surrogate species in the context of conservation, as evidenced by the Four Exhibits, is not subject to reasonable dispute.  Indeed, the primary document upon which Plaintiffs rely in seeking judicial notice is the Service's own Technical Reference.  The other documents are articles published by respected conservation biologists in highly regarded peer-reviewed scientific journals that are, in turn, cited in the Service's Technical Reference.  Plaintiffs allege that Defendants' administrative record was devoid of science concerning species-specific metabolic and reproduction rates.  Pls.' Reply at 6.  The Four Exhibits cannot and do not reach that question, and Plaintiffs have not requested this Court take judicial notice to resolve that question.  The Defendants' administrative record speaks for itself in showing that Defendants lack sufficient science regarding the Bone Cave harvestman's metabolic and reproductive rates.

Like Defendants' use of *SB Int'l*, their use of *Bittakis v. City of El Paso* is unavailing.  Defs.' Mot. at 2 (citing *Bittakis v. City of El Paso*, No. EP-05-CV-0402, 2007 WL 602631, at \*1 (W.D. Tex. Jan. 18, 2007) ("*Bittakis*")).  Defendants cite *Bittakis* as support for their position

that this Court should deny Plaintiffs' Request for the purpose of "proving these disputed statements."  Defs.' Mot. at 2.  However, *Bittakis* involved a plaintiff asking the court to take judicial notice of "23 separate and distinct facts" that the court found to be "operative" to the case, and judicial notice of which would "essentially be denying [d]efendants the opportunity to put the proffered facts in context with the lawsuit . . . . [and] would not allow the [d]efendants the opportunity to deny the proffered facts or contest their applicability to the instant case." *Bittakis* at *1.  Unlike the 23 separate and distinct facts at issue in *Bittakis*, the purpose of the Four Exhibits here is to demonstrate to this Court that Defendants themselves have standards for the use of surrogate species when evaluating a listed or candidate species' biology and life cycle. That is a fact not subject to reasonable dispute.

## II.     COURTS COMMONLY TAKE JUDICIAL NOTICE OF AGENCY GUIDANCE AND OTHER DOCUMENTS

Courts have willingly taken judicial notice of agency guidance and other documents, even in cases that arise under the Administrative Procedure Act ("APA").  For example, in *Friends of the River v. U.S. Army Corps of Engineers*, the court took judicial notice of an engineer technical letter ("ETL") and white paper issued by the U.S. Army Corps of Engineers for limited use as background material in order to facilitate the court's understanding of the underlying issues of the case.  870 F. Supp. 2d 966, 974 (E.D. Cal. 2012).  While both parties in *Friends of the River* requested that the court take judicial notice of the ETL and white paper, the court "limit[ed] its notice of th[ose] documents to background materials and it [would] not rely on th[ose] documents to resolve any factual dispute."  *Id.* at 974 (citing *U.S. v. 14.02 Acres of Land More or Less in Fresno Cty.*, 547 F.3d 943, 955 (9th Cir. 2008)).

Examples of courts taking judicial notice of agency documents are not hard to find.  For example, the court in *In re Zyprexa Products Liability Litigation* stated that

> [j]udicial notice can be taken of prior complaints and legal proceedings, press releases and news articles . . .  Public documents issued by government agencies such as the Food and Drug Administration ("FDA") may also be considered.

549 F. Supp. 2d 496, 501 (E.D. N.Y. 2008).  In *DeMarco v. DepoTech Corporation*, the court determined that it could consider a transcript of an FDA advisory committee meeting in a motion to dismiss.  149 F. Supp. 2d 1212, 1218 (S.D. Cal. 2001), *aff'd*, 32 Fed. App'x 260 (9th Cir. 2002).  The *In re Frito-Lay North America, Inc. All Natural Litigation* court took judicial notice of a number of federal agency documents, including various U.S. Department of Agriculture ("USDA") publications (including: USDA Food Standards and Labeling Policy Book, USDA Policy Memorandum concerning Genetically Modified Organisms, USDA article appearing in the National Agricultural Library on labeling organic foods, draft Food and Drug Administration ["FDA"] guidance for the food industry on voluntary labeling, and two FDA warning letters).  *In re Frito-Lay N. Am., Inc. All Natural Litig.*, No. 12-MD-2413, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) ("*In re Frito-Lay*").  In so doing, the court explained:

> At bottom . . . plaintiffs' arguments respond not to whether the Court should take notice of the documents, but rather whether the Court should draw from them the inferences and conclusions that defendants suggest in their motion to dismiss . . . . **Whether to take judicial notice is an inquiry separate and distinct from what inferences or conclusions to draw from the noticed material.**

*Id.*, at *4; *see also Noble Asset Mgmt. v. Allos Therapeutics, Inc.*, No. CIVA-04CV-1030, 2005 WL 4161977, at *2 (D. Colo. Oct. 20, 2005) (court could take judicial notice of FDA guidance documents because they related to FDA's drug application review process, which was central to the claims made in the case).

## III.    PLAINTIFFS HAVE NOT REQUESTED SUPPLEMENTATION OF THE ADMINISTRATIVE RECORD

Defendants cite several cases in support of their position that the Service's own Technical Reference and the peer-reviewed articles in it should not be considered by this Court.  *See generally Medina Cnty. Envt'l Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687 (5th Cir. 2010); *Citizens to Pres. Overton Park v. Volpe*, 401 U.S. 402 (1971); *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729 (1985); *Camp v. Pitts*, 411 U.S. 138 (1973); *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983).  Defendants ignore, however, that most of

these cases describe circumstances in which documents outside the administrative record may be permitted to supplement the administrative record rather than to be judicially noticed, including when "the district court needed to supplement the record with 'background information' in order to determine whether the agency considered all of the relevant factors . . . ." *Medina Cnty.*, 602 F.3d at 706-07 (finding that the documents plaintiffs asked court to consider in a request to supplement the record did "not contain information potentially adverse to the Decision and [did ] not set out additional factors that the [agencies] failed to consider"); *see also Citizens to Pres. Overton Park*, 401 U.S. at 420 (noting that "since the bare record may not disclose the factors that were considered or [the agency's]s construction of the evidence it may be necessary for the District Court to require some explanation in order to determine if the [agency] acted within the scope of [its] authority and if the [agency's] action was justifiable under the applicable standard"); *Fla. Power & Light*, 470 U.S. at 744 ("If the record before the agency does not support the agency action [or] if the agency has not considered all relevant factors . . . the proper course . . . is to remand to the agency for additional investigation or explanation."); *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 ("The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine relevant data and articular a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'"). *Camp* is inapposite here, as that the Court in that case examined whether a de novo review in the appellate court was appropriate—and found that under the APA it was not. *Camp*, 411 U.S. at 142-423.

Plaintiffs have not requested Defendants supplement the administrative record. Plaintiffs have requested only that this Court take judicial notice of the fact that the Service has itself recognized that, with respect to using surrogate species, "substantial effort, including data collection, must occur to achieve a specific outcome and *ensure the validity of their use*", Technical Reference at 64 (Dkt. No. 156-5, Ex. 1); in other words, "it is inappropriate to assume that one species is a proper surrogate for another."  *See generally* Pls.' Request, Dkt. No. 156-5;

*see also* Pls' Reply, Dkt. No. 156 at 6.  The Four Exhibits all pre-date the 90-day Finding; therefore, they were available both as of the time the challenged decision was made and as of the time Defendants drafted their arguments in reliance on information about species other than the Bone Cave harvestman to draw conclusions regarding the Bone Cave harvestman.

As Plaintiffs set forth in their Request, the Technical Reference was published in order to "provide[] a common understanding of the concepts, terms and definitions associated with surrogate species" and included a "critique of [surrogate species'] value as management tools." Pls.' Request at 2 (citing Technical Reference at 4).  Plaintiffs' Request is nothing more than a request that this Court acknowledge that the Service has issued guidance on the use of surrogate species.  To the extent that the Service takes the position now that it failed to consider its own guidance on use of surrogate species when making its decision regarding the Bone Cave harvestman in reliance on information regarding other species that it assumed were appropriate surrogates, the Service is acknowledging that it acted in a manner that is arbitrary in violation of the APA.

## IV.   DEFENDANTS HAVE USED GUIDANCE DOCUMENTS WITHOUT SUPPLEMENTING THE RECORD

While Defendants suggest here that it is improper to request judicial notice of the existence of its own Technical Reference and scientific articles cited therein, in other cases, the Service has relied on its own guidance documents without including them in the administrative record.  For example, in the *Consolidated Delta Smelt Cases*, the Service relied upon its *Endangered Species Consultation Handbook: Procedures for Conducting Consultation and Conference Activities Under Section 7 of the Endangered Species Act* ("Consultation Handbook") to demonstrate that the consultation process at issue in that case was proper, despite the fact that the Service had not included the Consultation Handbook in the administrative record.  *See* Federal Defs.' Mem. in Supp. of Mot. for Summ. J. at 5-6, *Consolidated Delta Smelt Cases*, No. 1:09-cv-00407-OWW-DLB (E.D. Cal. 2010), Dkt. No. 231.  Indeed, in a memorandum decision and order regarding a motion to supplement the record in one of the

related cases, the district court in mentioned in a footnote that it had taken judicial notice of the Consultation Handbook. *San Luis & Delta-Mendota Water Auth. v. Salazar*, No. 1:09-CV-407 OWW DLB, 2009 WL 5084082, at *2 n. 1 (E.D. Cal. Dec. 16, 2009).

In *Klamath-Siskiyou Wildlands Center v. National Oceanic and Atmospheric Administration*, the court cited to the *Habitat Conservation Planning and Incidental Take Permit Processing Handbook* ("HCP Handbook") which was issued jointly by the Service and the National Marine Fisheries Service, and noted:

> [w]hile the HCP Handbook is not in the Administrative Record, [Plaintiff] attached it as an exhibit to its summary judgment filling, Dkt. No. 54-1, and it is a publicly available document.  Additionally, the Services agree that the Court may take judicial notice of this document . . .  Accordingly, the Court takes judicial notice of the HCP Handbook.

99 F. Supp. 3d 1033, 1047, 1047 n. 4 (N.D. Cal. 2015).

There are, of course, other examples of Defendants citing to Service or Department of the Interior guidance documents apparently without including them in the record, including the Service's citation to the HCP Handbook in *Loggerhead Turtle v. County Council of Volusia County, Florida*, 120 F. Supp. 2d 1005 (M.D. Fla. 2000), and in *Greater Yellowstone Coalition v. United States Forest Service.*, 12 F. Supp. 3d 1268, 1287 (D. Idaho 2014) (citing both to the administrative record in that case and, separately, to the Forest Service Handbook).  *See generally* Federal Def.'s Mem. in Opp'n to Pls.' Mot. for Partial Summ. J., *Loggerhead Turtle*, 120 F. Supp. 2d 1005 (M.D. Fla. 2000) (Dkt. No. 228), 2000 WL 35722201; *see also* Defs.' Mem. in Supp. of Cross-Mot. for Summ. J. at 17, *Greater Yellowstone Coal. v. U.S. Forest Serv.*, 12 F. Supp. 3d 1268 (D. Idaho 2014) (Dkt. No. 35), 2013 WL 942260, n. 18 (U.S. Forest Service cites separately to its Handbook in same the footnote as citations to the administrative record in that case).

## CONCLUSION

Plaintiffs have properly requested judicial notice of the Four Exhibits.  Defendants' and Defendant-Intervenors' objections to the Four Exhibits and, in particular, the Technical

Reference which was authored by the Service itself, underscores the meritless nature of the objections.  For the reasons set forth herein, Plaintiffs respectfully urge this Court to overrule Defendants' Motion, as well as the objections of Defendant-Intervenors set forth in their Reply to Plaintiffs' Combined Response (Dkt. No. 161).

Dated:  February 23, 2018                  Respectfully submitted,

                                           NOSSAMAN LLP

                              By:      /s/ Alan M. Glen
                                       Alan M. Glen (Texas Bar No. 08250100)
                                       aglen@nossman.com
                                       Brooke M. Wahlberg (Texas Bar No. 24055900)
                                       bwahlberg@nossman.com
                                       Rebecca Hays Barho (Texas Bar No. 24055641)
                                       rbarho@nossman.com
                                       NOSSAMAN LLP
                                       816 Congress Avenue, Suite 970
                                       Austin, TX  78701
                                       Telephone:      512.651.0660
                                       Facsimile:      512.651.0770

                                       Paul S. Weiland (California Bar No. 237058)
                                       *Admitted to Practice in USDC, W.D. Tex.*
                                       pweiland@nossman.com
                                       NOSSAMAN LLP
                                       18101 Von Karman Avenue, Suite 1800
                                       Irvine, CA  92612
                                       Telephone:      949.833.7800
                                       Facsimile:      949.833.7878

                                       *Attorneys for Plaintiffs*
                                       *American Stewards of Liberty; Charles and Cheryl*
                                       *Shell; Walter Sidney Shell Management Trust;*
                                       *Kathryn Heidemann; and Robert V. Harrison, Sr.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Robert E. Henneke
Chance D. Weldon
TEXAS PUBLIC POLICY FOUNDATION
Center for the American Future
901 Congress Avenue
Austin, TX 78701
Tel:    512.472.2700
Fax:    512.472.2728
Email: rhenneke@texaspolicy.com
       cweldon@texaspolicy.com
*Attorneys for Intervenor-Plaintiffs*

Chad Ennis
Kevin D. Collins
David Springer
BRACEWELL LLP
111 Congress Ave., Suite 2300
Austin, TX 78701
Tel:    512.473.7800
Fax:    800.404.3970
Email: chad.ennis@bracewelllaw.com
       kevin.collins@bracewelllaw.com
       david.springer@bracewell.com
*Attorneys for Intervenor-Plaintiffs*

Lesley K. Lawrence-Hammer
U.S. DEPARTMENT OF JUSTICE
Environment & Natural Resources Division
Wildlife & Marine Resources Section
Ben Franklin Station, P.O. Box 7611
Washington, DC 20044-7611
Tel:    202.305.0217
Fax:    202.305.0275
Email: lesley.lawrence-hammer@usdoj.gov
*Attorneys for Federal Defendants*

Charles W. Irvine
IRVINE & CONNER
4709 Austin
Houston, Texas 77004
Tel:    713.533.1704
Email: charles@irvineconner.com
*Attorneys for Intervenor-Defendants*

Jared M. Margolis
CENTER FOR BIOLOGICAL DIVERSITY
2852 Williamette Street #171
Eugene, OR 97405
Tel:    802.310.4054
Email: jmargolis@biologicaldiversity.org
*Attorneys for Intervenor-Defendants*

Jason C. Rylander
DEFENDERS OF WILDLIFE
1130 17th Street, N.W.
Washington, D.C. 20036
Tel:    202.682.9400
Fax:    202.682.1331
Email: jrylander@defenders.org
*Attorneys for Intervenor-Defendants*

Ryan A. Shannon
CENTER FOR BIOLOGICAL DIVERSITY
P.O. Box 11374
Portland, OR 97211-0374
Tel:    214.476.8755
Email: rshannon@biologicaldiversity.org
*Attorneys for Intervenor-Defendants*

Steven J. Lechner
MOUNTAIN STATES LEGAL
FOUNDATION
2596 South Lewis Way
Lakewood, Colorado 80227
Tel:    303.292.2021
Fax:    303.292.1980
Email: lechner@mountainstateslegal.com
*Attorneys for Amicus Curiae Mountain States*
*Legal Foundation*

David F. Barton
GARDNER LAW FIRM
745 East Mulberry Avenue, Suite 500
San Antonio, TX 78212
Tel:    210.733.8191
Fax:    210.733.5538
Email: dbarton@gardnertx.com
*Attorneys for Amicus Curiae Mountain States*
*Legal Foundation*

Michael C. Toth
OFFICE OF THE TEXAS ATTORNEY
GENERAL
209 W. 14th St., 8th Floor
Austin, TX 78701
Tel:    512.936.0631
Email: michael.toth@oag.texas.gov
*Attorneys for Amicus Curiae State of Texas*

David J. Hacker
Office of Special Litigation
ATTORNEY GENERAL OF TEXAS
P.O. Box 12548, Mail Code 009
Austin, TX  78711-2548
Tel:    512.936.1414
Email: david.hacker@oag.texas.gov
*Attorneys for Amicus Curiae State of Texas*

     /s/ *Alan M. Glen*
            Alan M. Glen